171 P.3d 756 (2007)
2007-NMCA-144
Jamie DURHAM and Travis Durham, Plaintiffs-Appellants,
v.
Suzanne GUEST, Defendant-Appellee.
No. 26,123.
Court of Appeals of New Mexico.
August 31, 2007.
Certiorari Granted October 29, 2007.
*757 Berardinelli Law Firm, David J. Berardinelli, Santa Fe, NM, for Appellants.
Kim E. Kaufman, Albuquerque, NM, for Appellee.
Miller Stratvert, P.A., Rudolph A. Lucero, Albuquerque, NM, for Amicus Curiae Property Casualty Insurers Association of America.
*758 MCML PA, Randi McGinn, Gaddy & Jaramillo, David Jaramillo, Albuquerque, NM, for Amicus Curiae New Mexico Trial Lawyers Association.
Certiorari Granted, No. 30,656, October 29, 2007.

OPINION
CASTILLO, Judge.
{1} This case comes to us on the district court's dismissal of a complaint under Rule 1-012(B)(6) NMRA. We affirm the district court.
I. BACKGROUND
{2} Based on the facts alleged in the complaint and the attached exhibits, we provide a general background of the case. Other facts will be added in the context of the issues as they are discussed. Plaintiffs, Jamie and Travis Durham, were insured under an automobile insurance policy issued by Allstate Insurance Company (Allstate). Plaintiffs' uninsured motorist (UM) coverage limit on the policy was $25,000 per person/$50,000 per accident. On March 11, 1997, Plaintiffs were involved in an automobile accident caused by an uninsured driver who was driving while intoxicated. Plaintiffs hired an attorney, who, on March 13, 1997, made a claim for UM coverage under the policy. On March 25, 1997, Plaintiffs' attorney put Allstate on notice that the claim would go to arbitration, and she named her choice of arbitrator.
{3} Plaintiffs' claim was first handled by adjuster Geri Moya and then by adjuster Susan Cary. On January 12, 1998, Plaintiffs' attorney provided Plaintiffs' medical records and associated billings to another Allstate employee. On January 27, 1998, Plaintiffs' attorney demanded payment of the policy limits for Plaintiffs.
{4} On March 2, 1998, almost a year after Plaintiffs' attorney first demanded arbitration, Allstate hired Defendant, Suzanne Guest, to act as its counsel for arbitration proceedings regarding Plaintiffs' claims. The same day, Defendant contacted Plaintiffs' attorney and advised her that Allstate had referred Plaintiffs' claim to her. At that time, Defendant was an attorney with The Farlow Law Firm.
{5} On March 24, 1998, Defendant wrote Plaintiffs' attorney regarding matters related to the arbitration, such as suggested dates, panel members, discovery details, and potential witness lists. On October 13, 1998, Allstate offered to settle Plaintiffs' claims for $13,300$5,800 for Jamie's claim and $7,500 for Travis's claim. The arbitration was held, and in late November 1998, the arbitration panel awarded $45,000, plus costs, to Plaintiffs. The arbitration award, exclusive of costs, exceeded the settlement offer by more than $31,000.
{6} On January 30, 2002, Plaintiffs filed a complaint against Defendant, Allstate, and the Allstate agent who sold the policy to Plaintiffs. The complaint alleges fourteen separate causes of action arising out of the claims processing and litigation tactics used during the handling and arbitration of Plaintiffs' UM claims. The claims against Allstate and its agent are not the subject of this appeal. Here, we address exclusively the claims against Defendant.
{7} Plaintiffs assert that Defendant's duties in her role as arbitration counsel included adjusting, investigating, and evaluating Plaintiffs' claim, which Defendant carried out in accordance with Allstate's claims handling and litigation protocols. In their complaint, Plaintiffs allege that in following Allstate's protocols, Defendant aided Allstate in the breach of its fiduciary duty to Plaintiffs. Plaintiffs also allege that Defendant engaged directly in various statutory violations; in addition, Plaintiffs allege that Defendant, together with Allstate, maliciously abused the legal processes of subpoenas and arbitration. Plaintiffs allege that Defendant's wrongful actions occurred between March 2, 1998, and November 19, 1998, when Defendant was representing Allstate in the arbitration of Plaintiffs' claims.
{8} Specifically, Plaintiffs' complaint alleges six named causes of action against Defendant: Count VIIviolation of the Trade Practices and Frauds Act; Count VIIIaiding and abetting a violation of fiduciary duty; Count IXunjust enrichment; Count X malicious abuse of process; Count XImalicious defense; and Count XIIprima facie tort. Defendant filed two motions to dismiss *759 these claims under Rule 1-012(B)(6), and the district court issued two orders, which together dismissed all counts against Defendant.
{9} Plaintiffs do not appeal the district court's dismissal of Counts IX, XI and XII. Therefore, we do not consider the causes of action for unjust enrichment, malicious defense, or prima facie tort. See Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A., 106 N.M. 757, 760, 750 P.2d 118, 121 (1988) (stating that a claim that is not briefed on appeal is deemed abandoned); State ex rel. State Highway & Transp. Dep't v. City of Sunland Park, 1999-NMCA-143, ¶ 11, 128 N.M. 371, 993 P.2d 85 (stating that issues not argued on appeal will not be considered).
{10} On appeal, Plaintiffs contend that the complaint states a cause of action under five theories: (1) aiding and abetting Allstate's breach of its fiduciary duty to Plaintiffs; (2) aiding and abetting Allstate's violation of various provisions in the New Mexico Insurance Code (Insurance Code), see NMSA 1978, § 59A-1-1 (1993); (3) direct violations of various provisions in the Insurance Code; (4) tortious interference with contractual rights; and (5) malicious abuse of process. We address each issue in turn.
{11} We conclude that because an arbitration is an adversarial proceeding, an attorney who is representing a client in an arbitration is not liable for aiding and abetting a breach of the client's fiduciary duty, unless the attorney acted outside the scope of representation, acted only in his or her own self-interest and contrary to the client's interest, or acted in a manner that would fall within the "crime or fraud" exception to the attorney-client privilege provided in the rules of professional conduct. We further conclude that an attorney who does not meet the statutory definition of "adjuster," pursuant to Section 59A-13-2, is not liable for direct violations of the TPFA. Finally, we determine that under these circumstances, an arbitration proceeding is not a judicial proceeding for purposes of a claim for malicious abuse of process. We decline to reach Plaintiffs' remaining claims because they failed to preserve these arguments. In light of the allegations in Plaintiffs' complaint and their arguments made below and on appeal, we hold that Plaintiffs have failed to state a claim upon which relief can be granted. Accordingly, we affirm the district court's orders granting Defendant's motions to dismiss.
II. DISCUSSION
A. Standard of Review
{12} In reviewing the grant of Defendant's motions to dismiss pursuant to Rule 1-012(B)(6), we accept all of the facts in Plaintiffs' complaint as true, and we review de novo the question of whether the district court properly applied the law to those facts. See R & R Deli, Inc. v. Santa Ana Star Casino, 2006-NMCA-020, ¶ 2, 139 N.M. 85, 128 P.3d 513; Butler v. Deutsche Morgan Grenfell, Inc., 2006-NMCA-084, ¶ 6, 140 N.M. 111, 140 P.3d 532 ("We review a district court's grant of a motion to dismiss de novo, accepting as true all of the appellant's well-pleaded allegations."). "[G]eneral allegations of conduct are sufficient, as long as they show that the party is entitled to relief and the averments are set forth with sufficient detail so that the parties and the court will have a fair idea of the action about which the party is complaining and can see the basis for relief." Schmitz v. Smentowski, 109 N.M. 386, 389-90, 785 P.2d 726, 729-30 (1990).
{13} Plaintiffs attached exhibits to their complaint, which were not excluded for purposes of Defendant's motions to dismiss. Therefore, relying on the facts alleged in the complaint and those admitted in Plaintiffs' exhibits, we review the district court's decision to dismiss each claim against Defendant pursuant to Rule 1-012(B)(6). See Rule 1-010(C) NMRA ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); cf. GCM, Inc. v. Ky. Cent. Life Ins. Co., 1997-NMSC-052, ¶¶ 11-13, 124 N.M. 186, 947 P.2d 143 (reviewing the grant of a summary judgment motion as a motion to dismiss while relying on the facts alleged in the defendant's complaint and affidavit attached to a reply below).
*760 B. Aiding and Abetting a Breach of Fiduciary Duty
{14} Plaintiffs assert that the facts alleged in their complaint were sufficient to support a claim against Defendant for aiding and abetting a breach of fiduciary duty. Plaintiffs rely on the Restatement (Second) of Torts § 876(b) (1979), which recognizes the tort of aiding and abetting as follows: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself[.]"
{15} Our Supreme Court recognized the tort of aiding and abetting a breach of fiduciary duty in GCM, Inc., 1997-NMSC-052, ¶ 17, 124 N.M. 186, 947 P.2d 143. To recover under this theory in our case, Plaintiffs must prove (1) that Allstate breached a fiduciary duty owed to Plaintiffs, (2) that Defendant knew Allstate owed Plaintiffs a fiduciary duty, (3) that Defendant intentionally provided substantial assistance or encouragement to Allstate to commit the act that Defendant knew was a breach of duty, and (4) that Plaintiffs suffered damages as a result. See id. ¶¶ 6, 17, 25 (concluding that the primary tortfeasor did not owe a duty to the plaintiff). Defendant must have acted in a role of accomplice in relation to Allstate.
{16} The district court dismissed the claim of aiding and abetting a breach of fiduciary duty on grounds that an adversarial proceeding was clearly anticipated at the time Defendant was hired by Allstate. The court relied on Garcia, 106 N.M. at 761, 750 P.2d at 122, which holds that "[a]n attorney has no duty . . . to protect the interests of a non-client adverse party for the obvious reasons that the adverse party is not the intended beneficiary of the attorney's services and that the attorney's undivided loyalty belongs to the client." Plaintiffs admit the essential fact on which the district court reliedthat Defendant is an attorney who was hired by Allstate to represent its interest during the arbitration of Plaintiffs' claim against Allstate. Plaintiffs argue, however, that they are not adverse parties to Allstate because it owes a fiduciary duty to Plaintiffs and that Garcia therefore does not apply.
{17} In support of this argument, Plaintiffs rely on Hendren v. Allstate Insurance Co., 100 N.M. 506, 510, 672 P.2d 1137, 1141 (Ct.App.1983). In Hendren, this Court discussed the relationship between an insurer and its insured under a UM policy. Id. at 509-10, 672 P.2d at 1140-41 (observing that on one hand, the insurer has an obligation to the insured because the insurer sold the policy, and on the other hand, "the insurer assumes an adversary role as to questions involving the uninsured motorist's negligence and any available defenses he might have"). We agree with Plaintiffs that the relationship between an insurer and an insured under a UM policy is different from the relationship between an insurer and a third-party stranger to the contract. However, we do not agree that Hendren limits the situations in which an adverse relationship may develop between an insurer and an insured with a UM policy. See id. at 508, 672 P.2d at 1139 (stating that the insurer, in providing coverage for the uninsured motorist, was negotiating from an adversary position). Plaintiffs appear to contend that once liability is established, the insurer has no right to dispute the amount of benefits due. The parties in Hendren, however, did not dispute the amount of the plaintiff's injuries and damages; so this Court never reached the issue. Id. Thus, Hendren cannot stand for the proposition, as argued by Plaintiffs, that an insurer and an insured cannot become adverse parties in regard to the amount of damages. See Fernandez v. Farmers Ins. Co. of Ariz., 115 N.M. 622, 627, 857 P.2d 22, 27 (1993) ("[C]ases are not authority for propositions not considered." (internal quotation marks and citation omitted)).
{18} To the contrary, an adversarial relationship can develop when a fiduciary relationship exists between a client and a third party. See Leyba v. Whitley, 120 N.M. 768, 771, 778, 907 P.2d 172, 175, 182 (1995) (recognizing that an adversarial relationship can develop between the client and a third party to whom the client owes a fiduciary duty). Moreover, adversarial relationships exist in arbitration proceedings. See Fernandez, 115 *761 N.M. at 626, 857 P.2d at 26 (stating that the district court's review of an arbitration award is limited because otherwise, adversarial proceedings would be prolonged, rather than expedited). In our case, when Plaintiffs demanded arbitration, an adversarial relationship began.
{19} We recognize that Plaintiffs generally allege in their complaint that Defendant "is contracted by Allstate to adjust, investigate and evaluate claims by Allstate insureds" and used Allstate's allegedly wrongful litigation protocols in adjusting, investigating, and evaluating Plaintiffs' claims. However, Plaintiffs specifically state in their factual allegations that Defendant "was hired by Allstate to act as counsel for Allstate in the arbitration of Plaintiffs' UM claims" and that Defendant's acts aided and abetted Allstate's wrongful conduct during the period of time in which she was representing Allstate in the arbitration proceedings, from March 2, 1998, to November 19, 1998. We therefore read Plaintiffs' complaint as alleging that Defendant adjusted, investigated, and evaluated Plaintiffs' claims in the course of her representation of Allstate in the arbitration proceedings. Plaintiffs do not allege that Defendant's actions took place prior to Plaintiffs' demand for arbitration. Nor do Plaintiffs allege that Defendant's actions took place prior to her being hired as counsel for the arbitration proceedings. We thus conclude that in light of Garcia, Plaintiffs failed to allege facts that would support their allegations that Defendant aided and abetted Allstate's breach of fiduciary duty.
{20} To determine otherwise would have a chilling effect on representation. If we were to accept Plaintiffs' argument, the following would result: anytime a plaintiff alleged that a defendant had breached a fiduciary duty to the plaintiff, an additional claim against the defendant's counsel for aiding and abetting that breach would withstand a Rule 1-012(B)(6) motion, even though the defendant's counsel had simply been representing the client's position in an adversarial proceeding. Before agreeing to represent a client, an attorney faced with this dilemma would have to evaluate the merits of his client's position and the attendant risks, then would have to monitor the case during the representation in order to evaluate the ongoing risk of liability. This would have a detrimental effect on the representation and would defeat the policy underlying the holding in Garcia. See 106 N.M. at 761, 750 P.2d at 122 (stating that "the attorney's ongoing and justifiable concern with being sued for negligence would detrimentally interfere with the attorney-client relationship"); Toles v. Toles, 113 S.W.3d 899, 910 (Tex.App.2003) (discussing the attorney's duty to zealously represent his or her client and observing that the imposition of liability on an attorney who is fulfilling his or her duties to a client "would act as a severe and crippling deterrent to the ends of justice" (internal quotation marks and citation omitted)); see also Restatement (Third) of the Law Governing Lawyers § 51 cmt. b (2000) ("Making lawyers liable to nonclients . . . could tend to discourage lawyers from vigorous representation."); id. cmt. h, at 365 ("[A] lawyer subsequently consulted by a fiduciary to deal with the consequences of a breach of fiduciary duty committed before the consultation began is under no duty to inform the beneficiary of the breach or otherwise to act to rectify it. Such a duty would prevent a person serving as fiduciary from obtaining the effective assistance of counsel with respect to such a past breach."); id. (stating that an attorney owes no duty to a beneficiary of a fiduciary if the "duty would create conflicting or inconsistent duties that might significantly impair the lawyer's performance of obligations to the lawyer's client in the circumstances of the representation" and that liability should thus not exist when the lawyer is assisting or representing the fiduciary in an open dispute with the beneficiary regarding a matter affecting the fiduciary's interest). Even if we were to assume that Allstate owes a fiduciary duty to Plaintiffs and that Allstate's actions constitute a breach of fiduciary duty, Plaintiffs have failed to allege facts concerning Defendant's conduct that would support a claim for aiding and abetting in that context. We therefore hold that under these circumstances, Defendant cannot be liable for aiding and abetting a breach of fiduciary duty.
*762 {21} Our holding today comports with the Restatement (Third) of the Law Governing Lawyers, which addresses, in the context of an attorney's duty to nonclients, the circumstances under which an attorney is liable for a client's breach of fiduciary duty. See id. § 51(4). Significantly, an attorney has no duty to the nonclient beneficiary of a client fiduciary, even when the attorney represents the client in the client's role as a fiduciary, if such a duty would significantly impair the performance of the attorney's obligations to his or her client. Id. § 51(4)(d); see id. § 51 cmt. h, at 363 (recognizing that a duty to a nonclient may be recognized only when, inter alia, "action by the lawyer would not violate applicable professional rules"). Although we recognize that the tort of aiding and abetting requires no duty running from the attorney to the nonclient, see GCM, Inc., 1997-NMSC-052, ¶¶ 8, 17, 124 N.M. 186, 947 P.2d 143, we conclude that the potential impairment of Defendant's obligations to Allstate demands the same result. See Restatement (Third) of the Law Governing Lawyers § 56 cmt. c, at 417 ("[A] lawyer is not liable to a nonclient for advising a client whether proposed client conduct would be lawful or for counseling a client to break a contract in the client's interest. The social benefit of proper legal advice and assistance often makes it appropriate not to hold lawyers liable for activities in the course of a representation." (citations omitted)); cf. Leyba, 120 N.M. at 778, 907 P.2d at 182 (holding that an attorney's duty to a third-party statutory beneficiary of an action is subject to an adversarial exception, which negates that duty when an adversarial relationship exists and when "the third party knows or should know that he or she cannot rely on the attorney to act for his or her benefit").
{22} Other jurisdictions have reached similar conclusions. Those jurisdictions hold that an attorney is not liable for activities conducted in the course of representation but is liable when acting outside the scope of representation. In Reynolds v. Schrock, 341 Or. 338, 142 P.3d 1062 (2006) (en banc), the court held that an attorney is subject to joint liability for a client's breach of fiduciary duty only when the plaintiff shows that the attorney was acting outside the scope of the attorney-client relationship. Id. at 1063; see also Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, 113 Hawai`i 251, 151 P.3d 732, 752 (2007) (concluding that the plaintiff failed to allege that the attorneys "possessed a desire to harm [that was] independent of the desire to protect their clients") (original alterations, internal quotation marks, and citation omitted); Alpert v. Crain, Caton & James, P.C., 178 S.W.3d 398, 407 (Tex.App. 2005) (stating that an action for aiding and abetting a breach of fiduciary duty would not lie, absent allegations of a tortious act or misrepresentation committed outside of the attorney's representation of the defendant). The court in Reynolds extended to the attorney-client relationship a qualified privilege like that provided for the principal-agent relationship. 142 P.3d at 1068-69 (stating that an attorney who is acting on a client's behalf and within the scope of the attorney-client relationship is protected by the privilege afforded a person acting as an agent or on behalf of another). See generally Restatement (Second) of Torts § 890 (1979) (discussing privileges). The court emphasized that the burden rests on the plaintiff to show that an attorney's actions occurred outside the scope of the attorney-client relationship. Reynolds, 142 P.3d at 1069. The court also stressed that the privilege does not protect attorney conduct unrelated to representation of the client or undertaken only to serve the attorney's own self-interest, which are contrary to the client's interest. Id.
{23} In this light, we review the complaint to determine whether Plaintiffs allege that Defendant acted outside the scope of her employment. An example is found in paragraph 45, wherein Plaintiffs allege that Defendant
knowingly or willfully or intentionally or maliciously engaged in unfair or deceptive or fraudulent acts or practices with respect to the handling of Plaintiffs' UM claim, including but not limited to: unnecessary investigation of irrelevant matters concerning Plaintiffs for the purpose of extorting a lower settlement or post[-]verdict retaliation, refusal to pay the reasonable value of Plaintiffs' claim when liability therefor was reasonably clear, [and] forcing Plaintiffs to *763 undergo protracted and unnecessary litigation to obtain substantially the same amounts as claimed prior to litigation under [Allstate's] litigation protocol.
Each of these alleged acts took place within Defendant's scope of employment as the legal representative of Allstate in the arbitration proceedings. Nowhere in Plaintiffs' thirty-threepage complaint do they allege that Defendant acted outside the scope of her employment. To the contrary, Plaintiffs allege that Defendant's actions were taken pursuant to Allstate's instructions, which were directed to Defendant in the scope of her employment.
{24} Moreover, Plaintiffs do not allege actions on the part of Defendant that would fall outside of a qualified litigation privilege. Plaintiffs allege generally that Defendant engaged in wrongful acts, "including but not limited to forcing insureds to endure protracted and unnecessary litigation." Plaintiffs also allege specifically that Defendant "knowingly, maliciously and intentionally ignored and violated [a] protective order for the purpose of implementing Allstate's [protocols] and improving her own rating with Allstate in order to ensure more referrals from Allstate." As per the allegations, these acts occurred during the period of Defendant's representation of Allstate. Plaintiffs do not allege that Defendant's acts were taken contrary to Allstate's interest or outside of Defendant's role as Allstate's counsel in the arbitration proceedings. Nor do Plaintiffs' allegations include conduct that would fall within the crime or fraud exception to the attorney-client privilege provided in the rules of professional conduct. See Reynolds, 142 P.3d at 1069 (stating that the qualified privilege "does not protect lawyers who are representing clients but who act only in their own self-interest and contrary to their clients' interest" and does not protect lawyers whose actions "fall within the `crime or fraud' exception" to the attorney-client privilege provided in the rules of professional conduct); see also Rule 16-102(D) NMRA (discussing crime or fraud in the context of scope of representation); Rule 16-106(B), (C) NMRA (discussing crime or fraud in the context of confidentiality). In summary, Plaintiffs do not allege facts indicating that Defendant had a desire to harm Plaintiffs independent of her desire to protect her client. See Kahala Royal Corp., 151 P.3d at 752. Accordingly, we cannot conclude that Plaintiffs' broad allegations concerning Defendant's actions are sufficient to support Plaintiffs' cause of action for aiding and abetting.
C. Violations of the Insurance Code
{25} On appeal, Plaintiffs contend that their complaint states sufficient facts to support their statutory claims. Specifically, Plaintiffs allege that Defendant directly violated the insurance Trade Practices and Frauds Act (TPFA), NMSA 1978, §§ 59A-16-1 to -30 (1984, as amended through 2006), the Domestic Abuse Insurance Protection Act (DAIPA), NMSA 1978, § 59A-16B-1 to -10 (1997), and the "Unfair Claims Practices Act." See § 59A-16-20. Plaintiffs also allege that Defendant aided and abetted Allstate in its statutory violations. We read Plaintiffs' unfair claims practices argument as alleging that Defendant violated or aided and abetted Allstate in violations of Section 59A-16-20 (having the title "Unfair claims practices defined and prohibited") of the TPFA. See Hovet v. Allstate Ins. Co., 2004-NMSC-010, ¶ 9, 135 N.M. 397, 89 P.3d 69; cf. Unfair Practices Act (UPA), NMSA 1978, §§ 57-12-1 to -24 (1967, as amended through 2005). Plaintiffs do not cite to any specific statutory provision of the UPA. We begin by addressing Defendant's contentions regarding preservation of these claims.
1. Defendant's Preservation Arguments
{26} Defendant asserts that Plaintiffs failed to preserve the claim of direct violation of DAIPA and the claim of aiding and abetting Allstate in its violations of various provisions of the Insurance Code. The district court did not address a cause of action based on the DAIPA; nor did it consider whether Defendant aided and abetted Allstate in violations of the Insurance Code. Defendant therefore argues that this issue should be affirmed because Plaintiffs' complaint does not contain the causes of action of aiding and abetting violations of the statutes and because Plaintiffs failed to argue these causes *764 of action to the district court before dismissal. Thus, Defendant argues, Plaintiff failed to preserve the issue for appellate review.
{27} Based on our review of the complaint, the record proper, and the transcripts of the hearings, we agree with Defendant. See Liberty Mut. Ins. Co. v. Salgado, 2005-NMCA-144, ¶ 18, 138 N.M. 685, 125 P.3d 664 (stating that an appellate court reviews the case actually litigated below and that failure to argue an issue at the trial court level will result in affirmance as to that issue on preservation grounds). Plaintiffs have failed to preserve these arguments. See Crutchfield v. N.M. Dep't of Taxation & Revenue, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("To preserve error for review, a party must fairly invoke a ruling of the district court on the same grounds argued in this Court."). By failing to preserve this argument, Plaintiffs did not give Defendant the opportunity to respond to, or the district court the chance to rule on, the specific arguments they now make. See Diversey Corp. v. Chem-Source Corp., 1998-NMCA-112, ¶ 38, 125 N.M. 748, 965 P.2d 332 (explaining that preservation serves the purposes of (1) allowing the trial court an opportunity to correct any errors and thereby avoiding the need for appeal and (2) creating a record from which the appellate court can make informed decisions).
{28} In Plaintiffs' reply brief, they argue that the allegations in the complaint state sufficient facts to support all of Plaintiffs' claims on appeal. Plaintiffs appear to contend that this is sufficient to preserve the unnamed theories of relief they now allege. However, Plaintiffs fail to point to any arguments presented below that would have alerted Defendant or the district court to Plaintiffs' contentions in regard to Defendant's direct violations of DAIPA or the aiding and abetting violations of the Insurance Code. Liberty Mut. Ins. Co., 2005-NMCA-144, ¶ 16, 138 N.M. 685, 125 P.3d 664 (stating that normal rules of preservation apply to review of a Rule 1-012(B)(6) motion).
{29} In a footnote in Plaintiffs' reply brief, they assert that the DAIPA is incorporated by reference in the unfair claims practices section of the TPFA; thus, Plaintiffs appear to imply that this cause of action was contained in the complaint. Even if this were a valid argument, Plaintiffs do not cite to any place in the record where they alerted the district court to this argument now made on appeal. Without more, Plaintiffs have failed to establish that this cause of action was preserved. Accordingly, we do not address Plaintiffs' claim of DAIPA violations or their claim of aiding and abetting Allstate's alleged violations of the TPFA.
2. Direct Violations of the TPFA
{30} The district court dismissed Plaintiffs' claim against Defendant for violations of the TPFA and unfair claims practices, Count VII. The court stated that the plain language of Section 59A-1-13 makes it clearthe legislature did not intend for the TPFA to apply to an attorney representing an insurance company. See § 59A-1-13 (defining "`transacting insurance'" and thereby identifying actions that are subject to the Insurance Code). On appeal, Plaintiffs rely on their general allegation that Defendant was acting as an adjuster. Plaintiffs assert that the complaint "alleges that [Defendant] was hired to represent or act for Allstate and to perform its first[-]party contractual dutiesas a claims `adjuster' and `investigator.'" Plaintiffs rely on Section 59A-13-2 to argue that the district court erred because the express language of the Insurance Code specifically includes an attorney who "represent[s] as an adjuster." See § 59A-13-2(B)(1); see also § 59A-13-2(A)(1). We are not persuaded.
{31} We begin by discussing the language of Section 59A-13-2. For the purposes of the Insurance Code, Section 59A-13-2(A)(1) defines "adjuster" in two parts. An "`adjuster'" is one who "(a) investigates, negotiates, settles or adjusts a loss or claim arising under an insurance contract on behalf of an insurer, insured or self-insurer, for a fee, commission or other compensation . . . and (b) advises the insured of his rights to settlement and his rights to settle, arbitrate and litigate the dispute." Section 59A-13-2(A)(1) (emphasis added). Section 59A-13-2(B) sets forth the exceptions to Section 59A-13-2(A)(1), including the following: "`[A]djuster' does not include . . . an attorney-at-law who *765 adjusts insurance losses or claims from time to time incidental to practice of law and who does not advertise or represent as an adjuster[.]" Section 59A-13-2(B)(1).
{32} We observe first that Plaintiffs' complaint alleges the first part of Section 59A-13-2(A)(1), that is, that Defendant "is contracted by Allstate to adjust, investigate and evaluate claims by Allstate insureds." See § 59A-13-2(A)(1)(a). However, Plaintiffs fail to allege facts in support of the second part of Section 59A-13-2(A), since Plaintiffs do not allege that Defendant's duties extended to advising Plaintiffs of their rights. See § 59A-13-2(A)(1)(b). Second, Plaintiffs fail to allege facts that would exclude Defendant from the exception provided for attorneys in Section 59A-13-2(B). Plaintiffs do not allege that Defendant adjusted, investigated, or evaluated Plaintiffs' claims outside of Defendant's role as an attorney representing Allstate in the arbitration proceedings. In addition, contrary to Plaintiffs' assertion, the complaint fails to allege that Defendant advertised or represented herself to be an "adjuster" as that term is used in the Insurance Code. Thus, in light of the plain language of Section 59A-13-2, we conclude that Plaintiffs have failed to allege sufficient facts to support Plaintiffs' allegations that Defendant directly violated any provisions of the TPFA.
{33} Our Supreme Court reached a similar conclusion on different grounds in Hovet. The Court held that "defense attorneys may not be named as party-defendants in claims brought under the unfair claims practices section." Hovet, 2004-NMSC-010, ¶ 27, 135 N.M. 397, 89 P.3d 69 (stating that "[i]n New Mexico, defense attorneys do not owe opposing parties any common-law duty of care" and that "[t]he same is true with respect to any statutory duties under the Insurance Code"). The Court further stated that in a private right of action, a defense attorney cannot be held liable for a violation of any statutory duties under the Insurance Code because the private right of action is limited to violations by insurance companies and their agents"attorneys are not included." Id.; see § 59A-16-30 (stating that "[a]ny person covered by [the TPFA] who has suffered damages as a result of a violation of that article by an insurer or agent is granted a right to bring an action in district court to recover actual damages").
{34} We acknowledge that the plaintiffs in Hovet were third parties with claims for liability against the defendant, whereas Plaintiffs in our case are insureds making claims for UM coverage. See 2004-NMSC-010, ¶¶ 1-8, 135 N.M. 397, 89 P.3d 69. We conclude, however, that this distinction does not preclude applying our Supreme Court's conclusion in Hovet to the case before us. See id. ¶ 27. Section 59A-16-30 is not limited to liability claims but, rather, applies to the TPFA in its entirety.
{35} Plaintiffs appear to argue that Defendant was not acting as a defense attorney and that Hovet therefore does not apply in this case. Defendant's complaint admits, however, that Defendant was hired to represent Allstate in the arbitration proceedings, and as discussed in paragraph 18 of our opinion, an arbitration is an adversarial proceeding. With this fact, we cannot conclude that Defendant was not acting as a defense attorney.
{36} In a footnote in Plaintiffs' brief in chief, they attempt to distinguish Hovet from the case at hand. Plaintiffs argue that defense lawyers are not subject to Section 59A-16-20 "in third party claims . . . because the statutory duty under the []TPFA is not legally established until after final resolution of the third party litigation and termination of the defense lawyer's representation." We do not read Hovet in this manner. See 2004-NMSC-010, ¶ 25, 135 N.M. 397, 89 P.3d 69 (stating that a third-party unfair claims practices action based on failure to settle may be filed only after the underlying negligence litigation is concluded and after a judicial determination of fault has been entered in favor of the third party and against the insured). As discussed in paragraph 33 of our opinion, our Supreme Court concluded that attorneys were excluded from liability in a private right of action under the Insurance Code because the plain language of Section 59A-16-30 does not include attorneys. See Hovet, 2004-NMSC-010, ¶ 27, 135 N.M. 397, 89 P.3d 69. Thus, Plaintiffs' argument is without merit. For all of the foregoing reasons, *766 we hold that Defendant cannot be held liable for direct violations of the TPFA.
D. Tortious Interference with Contractual Rights
{37} Defendant asserts that Plaintiffs failed to preserve their claim of tortious interference with contractual rights. Again, Plaintiffs contend that their complaint contains sufficient allegations to support the claim. While this may be true, a review of the record discloses that Plaintiffs did not make this argument to the district court; thus, this contention is first made on appeal.
{38} In their reply brief to this Court, Plaintiffs argue that the claim was preserved when they asserted, in their response to Defendant's motion to dismiss, that Defendant conspired with Allstate to interfere with their contractual rights. In Plaintiffs' response below, they stated the following: "[I]t is . . . clear that Plaintiffs are again alleging a conspiracy agreement between [Defendant] and Allstate to deprive Plaintiffs of their contractual rights under both common law and statutory claims." This brief allusion to contractual rights in a fifteen-page response is insufficient to alert the district court or the opposing party of Plaintiffs' claim of liability based on an unnamed theory of tortious interference with contractual rights. In our review of the record, we found no other argument that would have alerted the court below or Defendant to this argument, and Plaintiffs cite to none. Because Plaintiffs failed to preserve their argument, we decline to address this cause of action.
E. Malicious Abuse of Process
{39} In their complaint, Plaintiffs allege two separate causes of action: malicious abuse of process and malicious defense. On appeal, they do not directly address the claim of malicious defense but ask the Court to recognize their claim for malicious defense as part of the claim for malicious abuse of process. Plaintiffs therefore rely on the allegations in both claims to support the one claim against Defendant for malicious abuse of process.
{40} We begin by reviewing the elements necessary for proving malicious abuse of process. In New Mexico, there are no longer separate torts of abuse of process and malicious prosecution; these two torts were restated as a single cause of action, known as malicious abuse of process. DeVaney v. Thriftway Mktg. Corp., 1998-NMSC-001, ¶ 1, 124 N.M. 512, 953 P.2d 277, abrogated on other grounds, Fleetwood Retail Corp. of N.M. v. LeDoux, 2007-NMSC-047, ¶ 30, 142 N.M. 150, 164 P.3d 31. The elements of the tort of malicious abuse of process are as follows:
(1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages.
Id. ¶ 17. The tort of malicious abuse of process is construed narrowly in order to protect the right of access to the courts. Id. ¶ 19.
{41} In our case, Plaintiffs fail to allege specific facts supporting the first element of the cause of action. First, Plaintiffs fail to allege that an arbitration is a judicial proceeding. To the contrary, at the hearing on Defendant's motion to dismiss Count X, Plaintiffs' attorney conceded that an arbitration is not a judicial proceeding. Second, Plaintiffs fail to allege that Defendant initiated or actively participated in initiating the arbitration. See Valles v. Silverman, 2004-NMCA-019, ¶ 13, 135 N.M. 91, 84 P.3d 1056 (holding that a nonlitigant to the action below may be liable if the nonlitigant was an active participant in the underlying proceeding). To the contrary, Plaintiffs acknowledge in their complaint that Defendant was not hired until the arbitration was anticipated. In fact, Plaintiffs' trial counsel demanded arbitration almost a year before Defendant was hired. Moreover, in the hearing below, Plaintiffs' counsel conceded that Plaintiffs were not claiming Defendant "had anything to do, in essence, with the arbitration, the bringing of it or not." Because Plaintiffs have failed to allege facts supporting the first element of *767 this cause of action, Plaintiffs' claim for malicious abuse of process must fail.
{42} Based on their contention that the first element requirement of "initiation of judicial proceedings" should be reasonably understood to include the "initiation of judicial process," Plaintiffs argue that the complaint alleges sufficient facts. Plaintiffs contend that DeVaney detailed two distinct methods in which liability can be found for malicious abuse of process: filing an action without probable cause or, in the alternative, misusing the legal process through some conduct that was formerly actionable under the tort of abuse of process. Thus, Plaintiffs urge us to read DeVaney to allow the cause of action based on the improper use of process, even when a defendant does not initiate a judicial proceeding. Plaintiffs misread DeVaney. Our Supreme Court did not substitute the improper use of process for the first element and thereby eliminate the requirement of judicial proceedings. Rather, the Court detailed two methods as alternative grounds for satisfying the second element, that is, that an improper act or misuse of process had occurred. DeVaney, 1998-NMSC-001, ¶¶ 20-28, 124 N.M. 512, 953 P.2d 277. The Court stated that the mere filing of a complaint was not enough and that in addition, the plaintiff must establish a misuse of process. Id. ¶¶ 20-21; see also Weststar Mortgage Corp. v. Jackson, 2003-NMSC-002, ¶ 8, 133 N.M. 114, 61 P.3d 823 (reaffirming the analysis and holding in DeVaney). Thus, DeVaney does not stand for the proposition that initiation of a judicial proceeding is not required.
{43} Plaintiffs rely on several out-of-state cases to support Plaintiffs' contention that abuse of process claims are not limited to the filing of a complaint by the defendant but are applicable to either party who misuses process after an action commences. While the out-of-state cases cited by Plaintiffs generally stand for these propositions, the case law of those states is different from the case law of New Mexico. First, in each case cited by Plaintiffs, the court did not address a tort comparable to New Mexico's malicious abuse of process. Compare Crackel v. Allstate Ins. Co., 208 Ariz. 252, 92 P.3d 882, 887 (Ct.App. 2004) (addressing the two elements of an abuse of process claim in Arizona, which do not include the initiation of judicial proceedings against the plaintiff by the defendant), Hopper v. Drysdale, 524 F.Supp. 1039, 1041-42 (D.Mont.1981) (addressing the three elements of an abuse of process claim in Montana, which do not include the initiation of judicial proceedings against the plaintiff by the defendant), and Givens v. Mullikin ex rel. Estate of McElwaney, 75 S.W.3d 383, 400 (Tenn.2002) (addressing the two elements of an abuse of process claim in Tennessee, which do not include the initiation of judicial proceedings against the plaintiff by the defendant), with DeVaney, 1998-NMSC-001, ¶ 17, 124 N.M. 512, 953 P.2d 277 (restating the torts of abuse of process and malicious prosecution as one cause of action encompassing four elements, one of which requires the initiation of judicial proceedings against the plaintiff by the defendant).
{44} Second, in DeVaney, our Supreme Court discussed the tort of malicious abuse of process in the context of a court proceeding. See 1998-NMSC-001, ¶ 19, 124 N.M. 512, 953 P.2d 277 ("Because of the potential chilling effect on the right of access to the courts, the tort of malicious prosecution is disfavored in the law."). Nowhere in New Mexico law is the definition of "judicial proceeding" expanded to include contractual arbitration proceedings conducted before the judicial system has been accessed. Cf. Medina v. Found. Reserve Ins. Co., 1997-NMSC-027, ¶ 10, 123 N.M. 380, 940 P.2d 1175 (describing arbitration as "a special statutory proceeding"). As a consequence, it does not appear that Plaintiffs' position has any support under current New Mexico law. We also observe that in each of the out-of-state cases on which Plaintiffs relied, an underlying action was initiated in the judicial arena prior to the alleged improper acts. See Crackel, 92 P.3d at 886; Hopper, 524 F.Supp. at 1040; Givens, 75 S.W.3d at 391. Given our Supreme Court's express requirement of judicial proceedings and the reminder that the tort of malicious abuse of process should be construed narrowly, we decline to expand its application to arbitration proceedings when a complaint has not been filed in the underlying action. See State ex rel. Martinez v. City *768 of Las Vegas, 2004-NMSC-009, ¶ 22, 135 N.M. 375, 89 P.3d 47 (stating that the New Mexico Court of Appeals is bound by New Mexico Supreme Court precedent).
III. CONCLUSION
{45} Based on the above, we affirm the district court's orders granting Defendant's motions to dismiss.
{46} IT IS SO ORDERED.
WE CONCUR: RODERICK T. KENNEDY and MICHAEL E. VIGIL, Judges.