### IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2009-NMSC-007**

**Filing Date: February 20, 2009**

**Docket No. 30,656**

**JAMIE DURHAM and TRAVIS DURHAM,**

       **Plaintiffs-Petitioners,**

**v.**

**SUZANNE GUEST,**

       **Defendant-Respondent.**


**ORIGINAL PROCEEDING ON CERTIORARI**
**Michael Eugene Vigil, District Judge**


Berardinelli Law Firm
David J. Berardinelli
Santa Fe, NM

for Petitioners


Guest Law Firm, P.C.
Suzanne Guest
Phoenix, AZ

for Respondent


Miller Stratvert P.A.
Ruth Fuess
Albuquerque, NM

for Amicus Curiae
Property Casualty Insurers Association of America

1

Michael B. Browde
Albuquerque, NM

for Amicus Curiae
New Mexico Trial Lawyers Association


Keleher & McLeod, P.A.
Thomas C. Bird
Gary J. Van Luchene
Albuquerque, NM

for Amicus Curiae
New Mexico Defense Lawyers Association

**OPINION**

**CHÁVEZ, Chief Justice.**

**{1}**     Plaintiffs Jamie Durham (Jamie) and Travis Durham (Travis) (together, the Durhams) sued Suzanne Guest (Guest) for malicious abuse of process, alleging that she issued subpoenas for an illegitimate purpose in an arbitration proceeding.  Guest contends that the Durhams failed to state a malicious abuse of process claim under *DeVaney v. Thriftway Marketing Corp.*, 1998-NMSC-001, 124 N.M. 512, 953 P.2d 277 (filed 1997), because she did not initiate the underlying arbitration and because arbitration proceedings are not judicial proceedings for the purpose of stating a malicious abuse of process claim.  The district court and the Court of Appeals agreed.  We reverse and hold that (1) it is not necessary for the defendant to have initiated judicial proceedings against the plaintiff in order to state a claim for malicious abuse of process, and (2) arbitration proceedings are judicial proceedings for the purpose of the tort of malicious abuse of process.

**I.     BACKGROUND**

**{2}**     Because this case is before us to review the district court's dismissal of the Durhams' malicious abuse of process claim pursuant to Rule 1-012(B)(6) NMRA, we accept as true all well-pled factual allegations.  *See Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, ¶ 2, 131 N.M. 272, 34 P.3d 1148.  In addition, we do not consider factual allegations raised for the first time by either party on appeal to determine whether the Durhams stated an actionable malicious abuse of process claim.  We therefore refer only to the well-pled facts in the Durhams' complaint and attached exhibits in recounting the facts pertinent to our review.

**{3}**     In March of 1997, the Durhams were traveling in Jamie's car when they were injured in an accident with an uninsured motorist who was driving while intoxicated. At the time of

the accident, Jamie's car was insured with Allstate Insurance Company (Allstate) under a policy containing uninsured motorist coverage. Both Jamie and Travis suffered personal injuries and other damages as a result of the accident.

**{4}** Two days after the accident, the Durhams' counsel advised Allstate that the Durhams would be making uninsured motorist claims for their injuries. A dispute arose regarding the amount of damages owed to the Durhams under the policy. Nearly one year after the accident, Allstate retained Guest to represent it in the arbitration of the Durhams' claims. The arbitrators awarded the Durhams $45,000 plus all arbitration costs, an award that exceeded Allstate's last offer to settle by over $31,000. No corresponding court proceeding was filed by either party with respect to the Durhams' uninsured motorist claims.

**{5}** In January of 2002, the Durhams brought a bad faith action against Allstate, Guest, and Allstate's sales agent for Jamie's policy, alleging over a dozen common law and statutory violations against them. Only the Durhams' malicious abuse of process claim is the subject of our review. In that claim, the Durhams alleged that, during discovery in the arbitration proceedings, Guest maliciously issued one or more subpoenas for an illegitimate purpose when she sought the Durhams' employment and medical records in violation of a protective order issued by the arbitrators. According to the Durhams' complaint, Guest's purpose for issuing the subpoenas was to ruin the Durhams' reputations, cause them to lose their employment, inflict humiliation and emotional distress upon them, invade their privacy, retaliate against them for refusing to accept Allstate's previous settlement offer, and coerce them into giving up their lawful right to benefits under Jamie's uninsured motorist policy. Upon Guest's motion, the district court dismissed all of the claims against Guest for failure to state a claim upon which relief can be granted. The Durhams appealed.

**{6}** The Court of Appeals affirmed the district court's dismissal and concluded that *DeVaney* requires that Guest must have initiated judicial proceedings against the Durhams in order for their malicious abuse of process claim to proceed. *Durham v. Guest*, 2007-NMCA-144, ¶ 42, 142 N.M. 817, 171 P.3d 756. The Court held that an arbitration proceeding is not a judicial proceeding for the purpose of malicious abuse of process and that, in any case, Guest did not initiate the arbitration. *Id.* ¶¶ 41-42. Citing this Court's directive that the malicious abuse of process tort should be construed narrowly, the Court of Appeals held that the Durhams' malicious abuse of process claim could not lie. *Id.* ¶ 44.

**{7}** The Durhams petitioned this Court for review, and we granted certiorari on the five issues presented in their petition. *Durham v. Guest*, 2007-NMCERT-010, 143 N.M. 74, 172 P.3d 1286. After reviewing the parties' briefs, we quashed certiorari as improvidently granted with respect to all issues listed in the Durhams' petition except the malicious abuse of process issue: whether the allegation that Guest issued a subpoena in an arbitration proceeding for an illegitimate purpose is sufficient to state a claim for malicious abuse of process.

3

## II. PRELIMINARY ISSUES

### A. REFERENCE TO FACTS NOT IN THE RECORD

{8}     The parties' counsel, David J. Berardinelli (Berardinelli) for the Durhams and Guest representing herself, have inundated this Court with paper.  We will not endeavor to count the number of pages of motions, responses, replies, and exhibits put before us while we considered this matter on review.  Suffice it to say that the maxim "less is more" is lost on both counsel in all respects.  We are compelled to comment on several specific abuses in counsels' filings, each related to the propriety of asking this Court to consider and resolve factual disputes with this appeal.

{9}     Both Berardinelli and Guest attempt to argue the factual basis of the malicious abuse of process claim on appeal.  They initially do so by improperly referring in their briefs to documents that were not presented to the district court judge for his consideration when he ruled on Guest's motion to dismiss.  Reference to exhibits not in the record proper and not presented to the district court for consideration is improper and a violation of the Rules of Appellate Procedure.  *Kassel v. Anderson*, 84 N.M. 697, 700, 507 P.2d 444, 447 (Ct. App. 1973), *overruled on other grounds by Fidelity Nat'l Bank v. Tommy L. Goff, Inc.*, 92 N.M. 106, 108-09, 583 P.2d 470, 472-73 (1978).  Therefore, we will not consider these exhibits on appeal.  *See State v. Wood*, 117 N.M. 682, 687, 875 P.2d 1113, 1118 (Ct. App. 1994) (exhibits to briefs that are not part of the record proper will not be considered on appeal); *State v. Lucero*, 90 N.M. 342, 345, 563 P.2d 605, 608 (Ct. App. 1977) ("Exhibits to briefs neither identified nor tendered as exhibits to the trial court will not be considered [on appeal].").

{10}     In addition to referring the Court to exhibits not before the district court, Berardinelli and Guest also make assertions of facts in their briefs that were not alleged in the complaint or otherwise before the district court.  As if the reference on appeal to facts not in the record were not audacious enough, in many cases both Berardinelli and Guest cite no authority in support of their new contentions.  Also, in many instances where Berardinelli does cite to the complaint in support of his new assertions, the complaint provides no support for the allegation.  We are not sure which is worse: failing to provide a citation to support a fact not in the record or providing a misleading one.  Regardless, we are certain that "[o]ur review on appeal is limited to a consideration of the transcript of the record properly certified by the clerk of the trial court[.]" *Fed. Nat'l Mortgage Ass'n v. Rose Realty, Inc.*, 79 N.M. 281, 281-82, 442 P.2d 593, 593-94 (1968).  We reiterate that counsels' reference to facts not before the district court and not in the record is inappropriate and a violation of our Rules of Appellate Procedure.  *See* Rule 12-213(A)(3) NMRA (stating that the brief in chief shall include a summary of the facts relevant to the issues presented for review with citations to the record proper, transcript of proceedings, or exhibits supporting each factual representation); Rule 12-213(B) (same for answer brief).  We therefore do not consider any of Berardinelli's or Guest's new factual assertions on appeal, and review only the complaint and exhibits attached thereto to determine if the Durhams stated a claim for relief.  Both

4

Berardinelli and Guest are admonished to adhere strictly to the Rules of Appellate Procedure in the future.

## B. EXHIBITS TO THE COMPLAINT

**{11}** The Durhams attached five exhibits to their complaint. On appeal, they argue that the Court of Appeals erred in considering these exhibits in ruling on their malicious abuse of process claim, relying on *Dellaira v. Farmers Ins. Exch.*, 2004-NMCA-132, ¶ 8, 136 N.M. 552, 102 P.3d 111. However, Guest contends that the Court's consideration of the exhibits was proper.

**{12}** We agree with Guest that the Durhams' reliance on *Dellaira* is misplaced. The issue before the Court of Appeals in *Dellaira* was whether it was proper to consider exhibits that were submitted in opposition to the plaintiffs' motion to dismiss, when nothing in the record indicated that the district court relied on the disputed exhibits when ruling on that motion. *Id.* ¶ 7. The Court held that under those circumstances, it would not consider the exhibits and would review the district court's decision under the standard applicable to Rule 1-012(B)(6) dismissals. *Id.* In this case, the exhibits in question were attached to the Durhams' complaint and were not submitted in response to Guest's motion to dismiss. Thus, *Dellaira* is inapposite, and our rules governing the attachment of exhibits to pleadings control. "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Rule 1-010(C) NMRA. Therefore, the Court of Appeals was correct when it considered the exhibits attached to the complaint and we may also consider the exhibits in determining the basis for the Durhams' malicious abuse of process claim.

## C. GUEST'S MOTION FOR SANCTIONS

**{13}** Guest filed a motion in this Court requesting us to impose sanctions against the Durhams and Berardinelli for knowingly making false factual representations to this Court in their certiorari briefs regarding their allegations that Guest misused the subpoena process in the underlying arbitration. In her motion, Guest contends that such misrepresentations violate Rule 16-303 NMRA (candor toward the tribunal) such that Rule 12-312(D) NMRA allows this Court to impose sanctions for failure to comply with the Rules of Appellate Procedure. Guest also contends that Berardinelli's factual misrepresentations to this Court directly violated the Court of Appeals' order requiring him to refrain from overzealous advocacy and to adhere to the Rules of Appellate Procedure. We denied the motion without prejudice.

**{14}** To resolve Guest's motion for sanctions, we would need to resolve factual disputes that are inextricably linked to the merits of the Durhams' claim. For example, Guest asserts that the Durhams or Berardinelli knew at the time of filing their complaint that she did not issue the subpoena that forms the basis of their malicious abuse of process claim. She argues that the Durhams or Berardinelli knowingly misrepresented this fact to the Court in their briefs. The Durhams' complaint, however, alleges that Guest misused a judicial process

5

when she issued subpoenas for an improper purpose. It does not list specific subpoenas. Therefore, we cannot tell from the complaint what subpoenas form the basis of the Durhams' complaint and whether Guest actually issued them. Furthermore, we cannot tell from the record when the Durhams or Berardinelli actually knew which subpoena(s) were issued by Guest, to whom, and for what purpose. Without the benefit of a developed record that clearly resolves the allegations in Guest's motion for sanctions, we declined to rule on its merits.

**{15}** Our denial of Guest's motion without prejudice will not prevent Guest from raising these issues again in the district court, nor is it meant to preclude the district court from considering and ruling on any of the issues raised in Guest's motion for sanctions, should Guest file such a motion in the district court on remand. Specifically, our denial of Guest's motion will not preclude the district court from determining whether the Durhams or Berardinelli violated the Rules of Appellate Procedure by knowingly making false representations in any of its filings in either the Court of Appeals or this Court.

## III.   DISCUSSION

**{16}** We review de novo the district court's dismissal of the Durhams' malicious abuse of process claim for failure to state a claim pursuant to Rule 1-012(B)(6). *See Valdez v. State*, 2002-NMSC-028, ¶ 4, 132 N.M. 667, 54 P.3d 71. The specific issue we must resolve is whether Guest's alleged issuance of a subpoena during an arbitration proceeding for the purpose of extortion is sufficient to state a malicious abuse of process claim when she did not initiate the arbitration proceeding against the Durhams. To resolve this dispute, we must address two separate issues: (1) whether the malicious abuse of process tort requires that the defendant have initiated the underlying judicial proceeding against the plaintiff, and (2) whether arbitration proceedings may be considered judicial proceedings for the purpose of malicious abuse of process.

**{17}** The Court of Appeals affirmed the district court's dismissal, holding that an arbitration proceeding is not a judicial proceeding for the purpose of malicious abuse of process, and that, in any event, Guest did not initiate the arbitration. *Durham*, 2007-NMCA-144, ¶¶ 41, 44. We reverse the district court, and hold that the defendant's initiation of judicial proceedings against the plaintiff is no longer a required malicious abuse of process element and arbitration proceedings are judicial proceedings for the purpose of the malicious abuse of process tort.

**{18}** In *DeVaney v. Thriftway Marketing Corp.*, 1998-NMSC-001, 124 N.M. 512, 953 P.2d 277 (filed 1997), *abrogated on other grounds by Fleetwood Retail Corp. of N.M. v. LeDoux*, 2007-NMSC-047, ¶¶ 19-21, 142 N.M. 150, 164 P.3d 31, we combined the torts of abuse of process and malicious prosecution and restated them as a single cause of action known as malicious abuse of process. 1998-NMSC-001, ¶¶ 1, 17. We held that the elements of the tort of malicious abuse of process are as follows:

(1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages.

*Id.* ¶ 17. The focus of the parties' arguments is the first malicious abuse of process element.

**{19}** The parties dispute whether this Court intended to limit claims for abuse of process in *DeVaney* to only those where the defendant had first brought a judicial action against the plaintiff. Guest argues that the plain language of the first malicious abuse of process element is unambiguous and that the Durhams' malicious abuse of process claim was properly dismissed because (1) she did not initiate the arbitration proceeding against them, and (2) an arbitration is not a "judicial" proceeding for the purposes of stating a malicious abuse of process claim. The Durhams argue that, despite our inclusion of the first malicious abuse of process element in *DeVaney*, this Court did not intend to eliminate malicious abuse of process claims when legal processes were abused by either party to a proceeding. Alternatively, the Durhams argue that the issuance of a subpoena may be considered "the initiation of a judicial proceeding" for the purposes of stating a malicious abuse of process claim. We understand the Durhams' second argument to be a response to Guest's claim that an arbitration proceeding may not be treated as a judicial proceeding for the purpose of malicious abuse of process. We address the following issues in turn: (1) whether the initiation of proceedings by the defendant is an element of malicious abuse of process, and (2) whether arbitration is a judicial proceeding for the purpose of stating a malicious abuse of process claim.

**A.      THE DURHAMS' ARGUMENT WAS PRESERVED**

**{20}** Guest argues that because the Durhams rely on facts not presented to the district court, many of their arguments are not preserved for review. We disagree. Although the Durhams presented facts in their brief that we will not consider in our review, they have consistently argued to the district court, the Court of Appeals, and this Court that the *DeVaney* Court did not intend to limit claims for malicious abuse of process to situations when the defendant initiated the judicial proceeding, and that issuing a subpoena for illegitimate purposes in an arbitration proceeding is sufficient to state a malicious abuse of process claim. Therefore, these arguments were preserved and we will properly consider them.

**B.      THE INITIATION OF JUDICIAL PROCEEDINGS BY THE DEFENDANT AGAINST THE PLAINTIFF IS NO LONGER AN ELEMENT OF MALICIOUS ABUSE OF PROCESS**

**{21}** The thrust of the Durhams' *DeVaney* argument is that this Court did not intend to

7

eliminate claims for abuse of process when the individual accused of abusing process was not the party who initiated the judicial proceeding. They contend that the *DeVaney* Court intended to combine both claims based on their similarities, and claims that would have been allowable under the former tort of abuse of process should be allowed after *DeVaney*, despite the plain language of the first malicious abuse of process element. Essentially, the Durhams argue that *DeVaney's* requirement that the defendants must have initiated the judicial proceedings in which they allegedly abused process is unfair because it allows defendants to abuse process within those proceedings simply because the defendants did not commence them. We agree. For basic reasons of equality and fairness, this cannot have been the *DeVaney* Court's desired result.

**{22}** This Court's motivation in *DeVaney* was to clarify the differences, if any, between the former torts of abuse of process and malicious prosecution. The specific issue before us was whether the filing of a complaint, without any subsequent act, could constitute the improper act necessary to state a claim for abuse of process and, if it could, how an abuse of process claim based solely on the filing of a complaint for an illegitimate purpose differed from an action for malicious prosecution. *See id.* ¶ 1. That issue was unclear in New Mexico law, and the facts before the Court in *DeVaney* raised the broader issue of whether New Mexico should maintain these two distinct torts.

**{23}** Prior to *DeVaney*, we stated that "[t]he initial use of process itself [*i.e.*, the initiation of litigation] may constitute the required overt act under the facts [necessary to state a claim for abuse of process]." *Richardson v. Rutherford*, 109 N.M. 495, 502, 787 P.2d 414, 421 (1990). We also stated that, "[w]hile a subsequent act may suffice to prove an abuse of process which was appropriate when issued, it is not an essential element [to stating an abuse of process claim]." *Id.* The New Mexico Court of Appeals subsequently noted this language and stated that *Richardson* "arguably might be read as blurring the line between malicious prosecution and abuse of process because it held that the improper act required for an abuse of process claim could be the filing of the complaint itself and that an improper subsequent act was not required." *Westland Dev. Co. v. Romero*, 117 N.M. 292, 294, 871 P.2d 388, 390 (Ct. App. 1994). Similarly, in *DeVaney*, the Court of Appeals "construed *Richardson* and *Westland* as allowing for the possibility that under certain, very limited and special circumstances[,] the filing of [a] suit could be enough [to state a claim for abuse of process]." 1998-NMSC-001, ¶ 8 (internal quotation marks and citation omitted).

**{24}** Thus, our charge in *DeVaney* was to clarify these two torts and determine whether a plaintiff could state a claim for abuse of process when the only alleged abusive act was the improper filing of a complaint. *See id.* ¶ 1 ("We granted certiorari to revisit and clarify the elements required for the two torts on which [the plaintiff] relies."). We held that while

> [a]n improper act, or misuse of process, need not occur subsequent to the filing of a complaint and might, in fact, be found in the complaint itself . .

8

. the filing of a proper complaint with probable cause, and without any overt misuse of process, will not subject a litigant to liability for malicious abuse of process, even if it is the result of a malicious motive.

*Id.* ¶ 20 (citations omitted). As a result, the *DeVaney* Court held that maliciously filing a complaint was insufficient to state a malicious abuse of process claim unless it was done without probable cause or was accompanied by some subsequent abuse of process. *Id.* ¶¶ 22, 28.

**{25}** Had we not gone further and clarified the elements of the two former misuse of process torts, this holding would have led to confusion regarding which cause of action–abuse of process or malicious prosecution–was the correct claim to make in such situations, because the act of filing a complaint without probable cause arguably satisfied the elements of both torts. *See id.* ¶ 11 (listing the elements of the former tort of malicious institution of civil proceedings). To minimize this confusion, we combined the two torts, recognizing that they shared common purposes and elements. *Id.* ¶¶ 14, 15. Importantly, in so doing we did not overrule our prior case law with respect to abuse of process. *See id.* ¶ 18 (recognizing that many of the traditional elements of the abuse of process tort continue to serve important purposes). Thus, we believe that this Court's intention was to allow claims that would have been viable under the former tort of abuse of process to have continued validity under the restated malicious abuse of process tort.

**{26}** Prior to *DeVaney*, the tort of abuse of process did not require that the defendant have initiated judicial proceedings against the plaintiff. Instead, to state such a claim, one had only to allege "(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." *Richardson*, 109 N.M. at 501, 787 P.2d at 420 (internal quotation marks and citation omitted). Before *DeVaney*, this Court said that "[o]ne who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." *Id.* (quoting Restatement (Second) of Torts § 682 (1976)). We also said that

> [a]n abuse of process arises only when there has been a perversion of court processes to accomplish some end which the process was not intended by law to accomplish, or which compels the party against whom it has been used to do some collateral thing which he could not legally and regularly be compelled to do.

*Farmers Gin Co. v. Ward*, 73 N.M. 405, 406, 389 P.2d 9, 11 (1964). In other words, the only prerequisites to bringing an abuse of process claim were that the defendant have misused a process within a judicial proceeding for some purpose that it was not intended. *See* Restatement (Second) of Torts, § 682 cmt. a (1977) ("The gravamen of the misconduct for which the liability stated in this Section [abuse of process] is imposed . . . is the misuse of process, no matter how properly obtained, for any purpose other than that

9

which it was designed to accomplish."). The initiation of judicial proceedings by the process abuser was not an element of this claim.

**{27}** Our restatement of the malicious abuse of process cause of action in *DeVaney* overlooked the fact that our law allowed some abuse of process claims to proceed when a defendant had not initiated the action against the plaintiff. In fact, in *DeVaney* we recognized that the abuse of process tort was broader than malicious prosecution, 1998-NMSC-001, ¶ 13, and we acknowledged that typical abuses of process involve the misuse of procedures, such as discovery abuses or the improper issuance of subpoenas. *Id.* ¶ 28. Instead of limiting claims for abuse of process, it was the Court's intention to preserve both torts, restating them only for the sake of simplicity and to avoid confusion. *See, e.g.*, *id.* ¶ 38 (recognizing "that malicious prosecution and abuse of process should be restated as a single cause of action in order to achieve the ultimate, common purposes for which they were created").

**{28}** Furthermore, the result of applying the first malicious abuse of process element to typical abuse of process claims would create an inequity that the *DeVaney* Court could not have intended. If the initiation of judicial proceedings by the defendant process abuser against the plaintiff remains a malicious abuse of process requirement, then a defendant that did not initiate the judicial proceeding may abuse process within that proceeding without risking malicious abuse of process liability. However, an abuse of process by the plaintiff could result in a valid malicious abuse of process claim. Such an inequitable cause of action cannot be what the Court intended, and we are compelled to correct that oversight.

**{29}** For these reasons, we overrule *DeVaney* with respect to its holding that all malicious abuse of process claims require the defendant to have initiated a judicial proceeding against the plaintiff. We leave in place the combined tort of malicious abuse of process, but restate its elements as follows: (1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages. An improper use of process may be shown by (1) filing a complaint without probable cause, or (2) "an irregularity or impropriety suggesting extortion, delay, or harassment[,]" or other conduct formerly actionable under the tort of abuse of process. *Fleetwood Retail Corp. of N.M.*, 2007-NMSC-047, ¶ 12 (citation omitted). A use of process is deemed to be irregular or improper if it (1) involves a procedural irregularity or a misuse of procedural devices such as discovery, subpoenas, and attachments, or (2) indicates the wrongful use of proceedings, such as an extortion attempt. *DeVaney*, 1998-NMSC-001, ¶ 28 (listing examples of abuse of process). Finally, we emphasize that the tort of malicious abuse of process should be construed narrowly in order to protect the right of access to the courts. *Id.* ¶ 19.

**C.**    **FOR THE PURPOSE OF MALICIOUS ABUSE OF PROCESS, AN ARBITRATION PROCEEDING IS A JUDICIAL PROCEEDING**

10

**{30}** Having concluded that it is not a requirement for Guest to have initiated the judicial proceeding for her to be found liable for any misuse of process within that proceeding, we must now determine if an arbitration is a "judicial proceeding" for the purpose of stating a malicious abuse of process claim. Relying on our directive to narrowly construe the malicious abuse of process tort, the Court of Appeals "decline[d] to expand its application to arbitration proceedings when a complaint has not been filed in the underlying action." *Durham*, 2007-NMCA-144, ¶ 44. The Court concluded that "[n]owhere in New Mexico law is the definition of 'judicial proceeding' expanded to include contractual arbitration proceedings conducted before the judicial system has been accessed." *Id.* The issue we must resolve is whether abuses of process in a judicial proceeding should be treated any differently than identical abuses in an arbitration. We believe they should not. We therefore reverse the Court of Appeals and hold that an arbitration proceeding is a judicial proceeding for the purpose of stating a malicious abuse of process claim.

**{31}** In any malicious abuse of process claim, the use of process for an illegitimate purpose forms the basis of the tort. *See Richardson*, 109 N.M. at 502, 787 P.2d at 421 ("Some definite *act* or threat not authorized by the process, or *aimed at an objective not legitimate in the use of the process, is required*[.]" (emphasis added) (quoting W.P. Keeton, D.B. Dobbs, R.E. Keeton, & D.G. Owen, *Prosser and Keeton on the Law of Torts* § 121, 898 (5th ed. 1984)). When the judicial process is used for an illegitimate purpose such as harassment, extortion, or delay, the party that is subject to the abuse suffers harm, as does the judicial system in general. Thus, the malicious abuse of process tort makes the process abuser liable to the other party for the harm caused by the abuse of process. *See id.* at 501, 787 P.2d at 420 (quoting the Restatement (Second) of Torts § 682 (1976)).

**{32}** Abuse of process torts have traditionally been limited to abuses in judicial proceedings. *See, e.g.*, *DeVaney*, 1998-NMSC-001, ¶ 17 (holding that, to state a malicious abuse of process claim, "there must be both a misuse of the power of the judiciary by a litigant and a malicious motive."). However, New Mexico has a strong public policy in favor of arbitration as a form of dispute resolution, as expressed in the Uniform Arbitration Act, NMSA 1978, §§ 44-7A-1 through -32 (2001). *See Fernandez v. Farmers Ins. Co. of Ariz.*, 115 N.M. 622, 625, 857 P.2d 22, 25 (1993). New Mexico has specifically determined that arbitration is an acceptable form of dispute resolution when the parties have agreed to resolve their dispute without accessing the judicial system. *See* § 44-7A-7(a) (stating that agreements to arbitrate are "valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract"). We see no reason why we should have any less interest in protecting citizens against misuses of process in an arbitration when the State has ratified, if not encouraged, arbitration as a form of dispute resolution.

**{33}** Furthermore, the processes that are susceptible to abuse in both the civil judicial system and arbitration proceedings are governed by similar rules such that abuses in

11

either forum should subject the abuser to liability. For example, with respect to subpoenas, the arbitrator "may issue a subpoena for the attendance of a witness and for the production of records and other evidence" so long as it is "served in the manner for service of subpoenas in a civil action[.]" Section 44-7A-18(a). In addition, a subpoena issued in an arbitration may be "enforced in the manner for enforcement of subpoenas in a civil action." *Id.* The arbitrator may also issue discovery-related orders, compel the attendance of a witness or the production of evidence, and may "take action against a noncomplying party to the extent a court could if the controversy were the subject of a civil action in this state." Section 44-7A-18(d). An arbitrator may also issue a protective order to the same extent allowed to the district court, § 44-7A-18(e), and "[a]ll laws compelling a person under subpoena to testify . . . apply to an arbitration proceeding as if the controversy were the subject of a civil action in this state." Section 44-7A-18(f). Therefore, the similarity of these rules of procedure suggest that we should treat abuses of the processes in an arbitration proceeding just as we would in a judicial forum.

**{34}** Finally, we note that arbitration awards are subject to confirmation by the district court, § 44-7A-23, and those awards are final, subject to a very limited scope of judicial review. *Fernandez*, 115 N.M. at 625, 857 P.2d at 25 (holding that the Uniform Arbitration Act does not allow a district court to review an arbitration award on the merits of the controversy). Magnifying the effect of this limited review, the doctrine of collateral estoppel is applicable to issues decided in arbitration proceedings. *Rex, Inc. v. Manufactured Hous. Comm.*, 119 N.M. 500, 505, 892 P.2d 947, 952 (1995). Just as the rules governing legal processes that may be subjected to abuse are similar in both civil actions and arbitrations, the outcomes of arbitration proceedings are similarly binding on the parties. These similarities compel us to treat abuses of process in either forum identically.

**{35}** We believe that the use of process in either a judicial or an arbitration proceeding to harass, extort, delay, or for any other illegitimate end should subject a person to the same civil liability for the resulting harm. Our interest in seeing that justice and fairness predominate in the resolution of parties' disputes is not confined within courthouse walls. Given this State's strong public policy in favor of arbitration, the similarities between the two types of proceedings, and the similarity of the harms that could be inflicted by abuses of process in either forum, we see no principled reason to distinguish malicious abuse of process claims on this basis. Therefore, we hold that for the purpose of the tort of malicious abuse of process, arbitration proceedings are judicial proceedings, and the improper use of process in an arbitration proceeding to accomplish an illegitimate end may form the basis of a malicious abuse of process claim.

## IV. CONCLUSION

**{36}** For the reasons stated above, we overrule *DeVaney* with respect to its requirement that the defendant have initiated judicial proceedings against the plaintiff in order to state a claim for malicious abuse of process. We restate the malicious abuse of process tort to

require: (1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages. We further hold that an arbitration proceeding is a judicial proceeding for the purpose of stating a malicious abuse of process claim.

**{37}** We therefore reverse the district court's dismissal of the Durhams' malicious abuse of process claim for failure to state a claim for which relief can be granted, and we likewise reverse the Court of Appeals' affirmance of that dismissal. We remand this claim to the district court with instructions to reinstate this matter on its docket.

**{38}** **IT IS SO ORDERED.**

 

**EDWARD L. CHÁVEZ, Chief Justice**

 

**WE CONCUR:**

 

**PATRICIO M. SERNA, Justice**

 

**PETRA JIMENEZ MAES, Justice**

 

**RICHARD C. BOSSON, Justice**

 

**TED BACA, District Judge**
**(sitting by designation)**

 

**Topic Index for *Durham v. Guest*, No. 30,656**

**AE          APPEAL AND ERROR**

AE-EX          Exhibits
AE-RA          Record on Appeal

**CP**        **CIVIL PROCEDURE**

CP-AP      Abuse of Process
CP-AT      Arbitration
CP-DS      Dismissal
CP-MD     Motion to Dismiss
CP-RC     Record

**RE**        **REMEDIES**

RE-AN     Arbitration

**TR**        **TORTS**

TR-AP      Abuse of Process
TR-MA     Malicious Abuse of Process**\***
TR-MP     Malicious Prosecution

**\*** New Topic Index