This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**EDDY HINER,**

    Plaintiff-Appellant,

v.                             **NO. 28,484**

**SOUTHERN FARM BUREAU
CASUALTY COMPANY,**

    Defendant-Appellee,

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY
Drew D. Tatum, District Judge**

Eric D. Dixon
Portales, NM

for Appellant

Madison, Harbour & Mroz, P.A.
William C. Madison
Sean P. McAfee
Albuquerque, NM

for Appellee

## MEMORANDUM OPINION

**FRY, Chief Judge.**

This is the second appeal in the course of an extended legal controversy between the parties. In the first appeal, we affirmed an order granting summary judgment to Eddy Hiner, Plaintiff in the present case, on claims of malicious abuse of process and fraud asserted against him by Southern Farm Bureau Casualty Co. (SFBC), Defendant in the present case. *See S. Farm Bureau Cas. Co. v. Hiner*, 2005-NMCA-104, ¶ 1, 138 N.M. 154, 117 P.3d 960. Following that appeal, Hiner reversed roles and sued SFBC in the present case for malicious abuse of process and prima facie tort. The trial court granted SFBC's motion for summary judgment, and Hiner now appeals. We affirm.

**BACKGROUND**

This legal saga began on January 20, 2001, when someone drove into and damaged some storage buildings belonging to Hiner and then left the scene. *Id.* ¶ 2. Hiner reported the incident to police, who concluded after an investigation that the tortfeasor responsible for the damage was Joshua Quebe. Before the police reached this conclusion, however, Matthew Lammiman came to Hiner's apartment and told Hiner that he had bumped Hiner's storage building. Hiner took down Lammiman's driver's license number and proof of insurance and contacted Lammiman's insurer. Shortly after that, Detective Lonnie Berry called Hiner and told him that Quebe, not

Lammiman, damaged the buildings, so Hiner called Lammiman's insurer again and apparently withdrew his claim.

Based on the police department's conclusion that Quebe was responsible for the damage, Hiner asserted a claim against Quebe and his insurer, SFBC, on January 22, 2001. Quebe denied having caused the damage. A little over a week later, SFBC's investigator took a statement from Hiner, during which Hiner made no mention of Lammiman's visit or his statement accepting responsibility for driving into Hiner's buildings. In May 2001, Hiner sued Quebe and SFBC for the damage to his storage buildings. During discovery, Hiner responded to interrogatories but failed to include Lammiman's name in response to a question asking for a list of "each person with knowledge of relevant facts concerning the incident at issue."

In June 2001, SFBC's adjuster or investigator reported that he had "the name of the other person that has a vehicle exactly like [Quebe's] vehicle. We are going to try and track him down." At some point during the summer of 2001, Quebe told SFBC's attorney that Lammiman was possibly involved in the damage to Hiner's property. This was later confirmed by Quebe's criminal defense attorney and by Lammiman himself. In August 2001, the criminal charges against Quebe for the damage to Hiner's property were dismissed.

Some two months after the dismissal of the criminal charges, Hiner's attorney subpoenaed Lammiman for a deposition. On October 24, 2001, in accordance with the stipulation of the parties, the trial court dismissed Hiner's claims against Quebe and SFBC with prejudice and allowed Hiner to amend his complaint to substitute Lammiman as the defendant. Soon after Hiner filed his amended complaint against Lammiman, Lammiman's insurer settled the claims.

On January 18, 2002, SFBC sued Hiner, claiming that Hiner's lawsuit against SFBC constituted malicious abuse of process and fraud. SFBC alleged that Hiner failed to investigate Lammiman's claim of responsibility for damaging Hiner's property before asserting a claim against SFBC and Quebe. *Hiner*, 2005-NMCA-104, ¶ 3. Thus, SFBC alleged, Hiner had no probable cause to sue SFBC. *Id.* ¶ 5. On Hiner's motion, the trial court in that case entered summary judgment in favor of Hiner against SFBC. We affirmed this judgment on appeal. *Id.* ¶ 26.

Hiner then sued SFBC in the present case, alleging that SFBC's suit against him constituted malicious abuse of process and/or prima facie tort. On SFBC's motion, the trial court granted summary judgment against Hiner. This appeal followed.

**DISCUSSION**

Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.* ¶ 9. Our review of these

legal questions is de novo. *Id.* If the movant is the defendant, it is the movant's initial burden to "negate[] at least one of the essential elements upon which the plaintiff's claims are grounded. Once such a showing is made, the burden shifts to the plaintiff to come forward with admissible evidence to establish each required element of the claim." *Id.* (internal quotation marks and citations omitted).

Hiner makes two primary arguments on appeal. He first contends that summary judgment on his claim of malicious abuse of process was improper because he established either that (a) SFBC lacked probable cause to file its claims of malicious abuse of process and fraud, or that (b) SFBC engaged in procedural improprieties in its lawsuit against Hiner. His second argument is that issues of fact precluded summary judgment on his claim of prima facie tort. We consider each argument in turn.

**1.      Malicious Abuse of Process Claim**

The elements of a claim of malicious abuse of process are: "(1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages." *Durham v. Guest*, 2009-NMSC-007, ¶ 29, 145 N.M. 694, 204 P.3d 19. "An improper use of process may be shown by (1) filing a complaint without probable cause, or (2) an irregularity or impropriety suggesting

extortion, delay, or harassment[,] or other conduct formerly actionable under the tort of abuse of process." *Id.* (alteration in original) (internal quotation marks and citation omitted).

### a.    Probable Cause

Probable cause is "the reasonable belief, founded on known facts established after a reasonable pre-filing investigation." *DeVaney v. Thriftway Mktg. Corp.*, 1998-NMSC-001, ¶ 22, 124 N.M. 512, 953 P.2d 277 (filed 1997), *overruled on other grounds by Durham*, 2009-NMSC-007, ¶ 29. "The lack of probable cause must be manifest." *Id.* "[I]f the extent of a plaintiff's knowledge in the underlying suit at the time of the initiation of the action is not in dispute, the issue [of probable cause] becomes one of law." *Hiner*, 2005-NMCA-104, ¶ 12. In the present case, the extent of SFBC's knowledge at the time it filed its suit against Hiner is not in dispute.

SFBC asserted two claims against Hiner in the prior lawsuit: a claim of malicious abuse of process and a claim of fraud. With respect to the claim of malicious abuse of process, Hiner contends that SFBC lacked probable cause because SFBC independently knew Lammiman's identity. Hiner relies on the following facts in support of his argument: (1) SFBC's adjuster noted on June 19, 2001, approximately six months before SFBC filed suit against Hiner, that he had the name of the other person whose vehicle was like Quebe's and that he would try to track down this person; (2) SFBC's attorney tried to contact Lammiman in the summer of 2001 to determine if he was responsible for the damage to Hiner's property; (3) the adjuster who interviewed Hiner after the accident never asked Hiner about Lammiman

7

or any other witnesses; and (4) if SFBC had interviewed Detective Berry at any time, it would have discovered the information about Lammiman.[1]

In response to this contention, SFBC does not dispute these facts but notes that they do not establish that it lacked probable cause. We agree. Hiner conceded that he knew about Lammiman on the date of the accident. Hiner failed to disclose to SFBC's adjuster in the initial interview that Lammiman had admitted to driving into one of Hiner's storage buildings even though the adjuster repeatedly asked Hiner if there was anything else he would like to add. Hiner's failure to disclose the information about Lammiman forced SFBC to discover Lammiman's identity in the course of its own months-long investigation. Thus, at the time SFBC filed its complaint against Hiner, it could reasonably believe based on these facts that Hiner had concealed his knowledge about Lammiman's possible involvement from the date of the accident until he dismissed his complaint against Quebe and SFBC some five months later. As our Supreme Court has stated, "[t]he lack of probable cause must be manifest," *DeVaney*, 1998-NMSC-001, ¶ 22, and "the tort of malicious abuse of

---

[1] Hiner also relies on the alleged fact that SFBC's insured, Quebe, knew Lammiman's identity "on the very night of the accident." However, the portion of the record Hiner cites in support of this alleged fact is a letter from Quebe's attorney to SFBC's attorney stating only that "[Quebe's] friends knew that there was another vehicle which looked similar [to Quebe's] and went around to try to find it. When they located it, and noticed that it had damage to it, they called the police department, and tried to take officers to see the second vehicle." There is nothing in this letter suggesting that Quebe knew Lammiman's identity.

8

process [must be construed] narrowly in order to protect the right of access to the courts." *Id.* ¶ 19. Within these perimeters, we conclude that the trial court properly determined as a matter of law that SFBC had probable cause to sue Hiner for malicious abuse of process.

Hiner also contends that SFBC lacked probable cause to assert its fraud claim against him. He maintains that SFBC had no evidence either that Hiner intended to deceive it or that it relied on Hiner's non-disclosure of Lammiman's identity. Both intent to deceive and reliance are elements of a fraud claim. *See Cain v. Champion Window Co.*, 2007-NMCA-085, ¶ 22, 142 N.M. 209, 164 P.3d 90 (stating that the elements of fraud include "(1) a misrepresentation of fact, (2) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation, (3) intent to deceive and to induce reliance on the misrepresentation, and (4) detrimental reliance on the misrepresentation" (internal quotation marks and citation omitted)).

SFBC responds that even if it lacked probable cause to support its fraud claim against Hiner, the probable cause supporting its claim for malicious abuse of process is conclusive. We agree. Our Supreme Court stated in *Fleetwood Retail Corp. v. LeDoux* that a trial court determining lack of probable cause should look at a complaint as a whole rather than at each claim. 2007-NMSC-047, ¶¶ 19-20, 142 N.M.

9

150, 164 P.3d 31. The Court expressly declined to "expose plaintiffs, who are subject to statutes of limitations and have not had the benefit of discovery when deciding what claims to pursue, to malicious abuse of process attacks based on lack of probable cause if it is later determined that one particular claim of several was not supported." *Id.* ¶ 21. Because we have concluded that SFBC had probable cause to assert its malicious abuse of process claim, Hiner cannot avoid summary judgment in the present case by parsing out SFBC's fraud claim.

**b.      Procedural Improprieties**

As an alternative to establishing that SFBC lacked probable cause, Hiner contends that SFBC was guilty of various procedural improprieties that can support his claim of malicious abuse of process. *See Hiner*, 2005-NMCA-104, ¶ 7 (noting that the element of misuse of process can be established either by lack of probable cause or "by some irregularity or impropriety suggesting extortion, delay, or harassment" (internal quotation marks and citation omitted)).

In support of his contention, Hiner points to the following facts:  (1) SFBC's attorney's partner told Hiner's attorney that it was police department policy not to let officers sign affidavits, that this forced Hiner to take the officers' depositions, and that one of the officers then signed an affidavit for SFBC; (2) SFBC's counsel's ex parte communication with the judge assigned to the case caused the judge to recuse; (3)

10

SFBC's counsel asked Hiner to reveal confidential attorney-client communications when Hiner was unrepresented by counsel; (4) SFBC's complaint asserted an allegation against Hiner's counsel in an attempt to "conflict out" Hiner's attorney; and (5) SFBC continued to pursue its claims against Hiner even after Hiner testified that he relied on Detective Berry's conclusion that Quebe was responsible for the property damage and after Detective Berry corroborated Hiner's testimony.

The record does not support Hiner's view that these incidents constitute improprieties "suggesting extortion, delay, or harassment." *See DeVaney*, 1998-NMSC-001, ¶ 28. First, the record establishes that Steven Doerr, who represented the City of Portales at the time and who is the law partner of SFBC's attorney, advised Hiner's attorney in September 2001 that it was the City's policy "not to have officers sign statements or affidavits in matters where the officers have been involved as a result of their employment with the police department." Even if there was something improper about this communication, and nothing in the record suggests that there was, it is notable that this communication occurred in the course of Hiner's litigation against SFBC and Quebe, not during SFBC's suit against Hiner, which is the subject of Hiner's present claim of malicious abuse of process. To the extent that Hiner's claim of impropriety rests on the subsequent affidavit obtained from one of the officers by SFBC during its litigation against Hiner, we are equally unpersuaded.

11

SFBC obtained that affidavit in March 2003, more than a year after Doerr's communication, and nothing in the record suggests that the City's policy was the same in 2003 as it had been in 2001. Consequently, Hiner has not established any impropriety.

Second, regarding SFBC's attorney's ex parte communication with the assigned judge, the record establishes that the judge in question, Judge Brack, initiated the telephone call. It is far from clear what exactly transpired during the telephone call, but it appears that Judge Brack was upset with SFBC's attorney for attaching a comment to a motion in a completely different case, the "*Lund v. Land*" case. Hiner's attorney was apparently participating in that case as well. As best we are able to tell from the record, the comment attached to the motion mentioned the fact that Judge Brack had admonished the attorneys in the case SFBC had filed against Hiner. Judge Brack then said that he would recuse in both cases. We fail to see how this conversation, initiated by Judge Brack, constitutes an impropriety by SFBC.

Third, we are unpersuaded that SFBC's attorney's questioning at Hiner's deposition constituted an impropriety suggesting extortion, delay, or harassment. SFBC's attorney asked Hiner if he had made his attorney aware of Hiner's initial contact with Lammiman. Even if these questions could be viewed as an improper inquiry into communications protected by the attorney-client privilege, reasonable

12

minds would agree that the questions do not constitute "perver[sion of process] to accomplish an ulterior purpose." *Santillo v. N.M. Dep't of Pub. Safety*, 2007-NMCA-159, ¶ 22, 143 N.M. 84, 173 P.3d 6.

Fourth, Hiner has not established that SFBC's allegation regarding Hiner's counsel was improper. SFBC's complaint alleged that "[t]he extent and involvement of Hiner's attorney of record remains uncertain . . . , but [SFBC] seeks leave of the [c]ourt to amend its [c]omplaint to include [Hiner's attorney] if discovery reveals his participation in this malicious abuse of process." Hiner ties this allegation to a letter from SFBC's attorney outlining reasons for filing a claim against Hiner, which stated, "I believe we stand a great likelihood of conflicting [Hiner's attorney] from representation of . . . Hiner, and we may obtain sufficient evidence through discovery to make [Hiner's attorney] a party, depending on his level of knowledge." Hiner fails to explain how the allegation and the letter rise to the level of an impropriety suggestive of extortion, delay, or harassment. There is no evidence that SFBC ever asserted a conflict on the part of Hiner's attorney or that it attempted to add Hiner's

13

attorney as a party.[2]  SFBC simply made the allegation in order to preserve a claim against Hiner's attorney that never came to fruition.

Fifth, SFBC agrees with Hiner that it pursued its litigation against Hiner after Hiner explained that he relied on the police investigation attributing responsibility to Quebe and that Detective Berry corroborated that this was indeed the officers' conclusion.  However, SFBC's claim was based on Hiner's withholding the information about Lammiman through many months of litigation, not on what the police did or did not think about who was responsible for the property damage.

In summary, the trial court properly concluded that Hiner failed to establish any facts that would constitute the type of impropriety supporting a claim for malicious abuse of process.  *See Fleetwood*, 2007-NMSC-047, ¶ 16 (listing examples of improprieties indicating a wrongful use of proceedings, such as "excessive execution on a judgment; attachment on property other than that involved in the litigation or in an excessive amount; oppressive conduct in connection with the arrest of a person or the seizure of property, such as illegal detention and conversion of personal property

---

[2]In his reply brief, Hiner asserts that SFBC filed a motion seeking to disqualify Hiner's attorney in July 2002.  However, Hiner does not tell us where in the record this fact can be verified.  *See Gomez v. Chavarria*, 2009-NMCA-035, ¶ 13, 146 N.M. 46, 206 P.3d 157 (explaining that "[w]here a party fails to cite any portion of the record to support its factual allegations, an appellate court need not consider its argument on appeal"), *cert. granted*, 2009-NMCERT-003, 146 N.M. 604, 213 P.3d 508.

pending suit; extortion of excessive sums of money" (internal quotation marks and citation omitted)); *Santillo*, 2007-NMCA-159, ¶¶ 24-26 (stating that there were issues of fact as to whether handcuffing the plaintiff at night in her place of business in front of customers and the failure to set the plaintiff's bond on a booking document constituted improprieties supporting a claim for malicious abuse of process). Given our Supreme Court's emphasis that the tort of malicious abuse of process "be construed narrowly in order to protect the right of access to the courts," *Durham*, 2009-NMSC-007, ¶ 29, we affirm the trial court's summary judgment on this claim.

We note that Hiner devotes a good portion of the arguments in his briefs to an apparent attempt to justify his own actions or non-actions in the first lawsuit he filed against SFBC. This Court acknowledged that Hiner had probable cause to sue SFBC in that lawsuit when we decided *Hiner*. However, Hiner's probable cause to sue SFBC does not equate to SFBC's lack of probable cause in filing its claim of malicious abuse of process against Hiner, as Hiner seems to suggest. The law construed Hiner's motives in the first lawsuit so as to protect his right of access to the courts just as we now construe SFBC's motives in the same way.

**2.     Prima Facie Tort**

The elements of prima facie tort are: "(1) an intentional and lawful act[,] (2) an intent to injure the plaintiff[,] (3) injury to the plaintiff as a result of the act[,] and

(4) the absence of sufficient justification for the act." *Saylor v. Valles*, 2003-NMCA-037, ¶ 23, 133 N.M. 432, 63 P.3d 1152 (filed 2002). The trial court concluded that Hiner failed to present any evidence of the second element, SFBC's intent to injure Hiner. We agree. Hiner does not muster any arguments to persuade us otherwise, other than to state in conclusory fashion that SFBC's attorney acknowledged that it would be difficult to sue Hiner's attorney, that Quebe knew about Lammiman on the night of the incident, that SFBC sued in retaliation for Hiner's complaining about SFBC's processing of the claim against Quebe, and that Hiner had no obligation to disclose Lammiman's name after Lammiman was exonerated by the police. We fail to see how these facts, if true, give rise to an inference that SFBC intended to injure Hiner when it sued him.

**CONCLUSION**

For the foregoing reasons, we affirm summary judgment in favor of SFBC.

**IT IS SO ORDERED.**

**CYNTHIA A. FRY, Chief Judge**

16

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Judge**

_____

**TIMOTHY L. GARCIA, Judge**