**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 12, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

---

MICHAEL D. RAYMOND, individually
and through his guardian and
conservator, Kathryn J. Raymond;
KATHRYN J. RAYMOND, individually
and as wife of Michael D. Raymond;
PATRICIA A. RAYMOND, daughter of
Kathryn and Michael; JENNIFER L.
HOLMES, individually as an American
with a disability,

      Plaintiffs-Appellees,

v.

JOE MARTINEZ, individually and as an
agent and employee of Defendant City of
Albuquerque,

      Defendant-Appellant,

and,

CITY OF ALBUQUERQUE,
a municipality; BRYAN NEAL,
individually and as an agent and
employee of Defendant City of
Albuquerque,

      Defendants.

No. 12-2000
(D.C. No. 1:09-CV-00177-ACT-RHS)
(D. N.M)

---

### ORDER AND JUDGMENT[*]

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding

(continued)

Before **O'BRIEN**, **McKAY**, and **BALDOCK**, Circuit Judges.

Defendant Joe Martinez appeals from the district court's denial of his post-trial motion for judgment as a matter of law (JMOL) on Jennifer L. Holmes's claim of malicious abuse of process. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

Mr. Martinez is an inspector with the Criminal Nuisance Abatement Unit of the Albuquerque, New Mexico police department (APD). In 2004, he investigated conditions on the residential property of plaintiffs Michael and Kathryn Raymond (the Raymonds).[1] Mr. Raymond allegedly performed car repairs and stored a number of vehicles and parts on his property in violation of various Albuquerque (the City) codes. Ultimately, the City and the Raymonds entered into a stipulated settlement agreement approved by a state-court judge ordering the Raymonds to stop performing automobile repairs other than on their own family cars and limiting any such repairs

precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] The Raymonds' daughter, Patricia, was also a plaintiff in this action, but she voluntarily dismissed her claims during trial.

- 2 -

to maintenance and minor repairs confined to their closed garage. The agreement also required the City to give notice before any future inspections of the property.

On January 30, 2007, Mr. Martinez and defendant Bryan Neal, an APD detective, went to the Raymonds' property to investigate complaints that Mr. Raymond was again storing vehicles and repairing them on the property. Neither Mr. Martinez nor Detective Neal entered the property. As Mr. Martinez was taking photographs, Mr. Raymond backed a car out of his driveway, allegedly asked Detective Neal if they were "going to go through this shit again," Aplt. App., Vol. IV at 683, then sped off, leaving lengthy skid marks and a cloud of smoke. Mr. Raymond circled the block and, upon returning, allegedly drove toward Mr. Martinez in excess of the 25-mph speed limit, swerving away at the last minute. Detective Neal then arrested and handcuffed Mr. Raymond, allegedly breaking Mr. Raymond's fingers in the process. Mr. Raymond was charged with reckless driving and eluding, evading, or obstructing an officer. Ultimately, he was found incompetent with regard to the charges.

On February 1, 2007, Mr. Martinez obtained an Inspection Order and Administrative Search Warrant for the entire Raymond premises. Although the Raymonds' house was a single-family residence with one physical address and one legal property description, it included an attached mother-in-law apartment where

Ms. Holmes, who is disabled by bipolar disorder, lived as a Section 8 resident.[2] Neither Ms. Holmes nor her separate apartment were identified in the warrant application or the warrant. When Mr. Martinez and at least eight or nine APD officers executed the warrant, only Ms. Holmes was at home. Officers used a battering ram on the Raymonds' front door and also entered Ms. Holmes's apartment. Ms. Holmes was told to stand outside, which she did. She was outside for fifteen to thirty minutes without proper clothing for the cold temperature before being given a blanket and shoes.

Mr. Martinez identified a number of code violations inside both the Raymonds' residence and Ms. Holmes's apartment, including improper storage, fire-code violations, and a gas leak in the Raymonds' commercial stove. Outside, Mr. Martinez documented twenty-six vehicles, twenty of which he deemed inoperable, some apparently in the process of being repaired or dismantled. He also found auto parts, repair equipment, and improperly stored automotive fluids. Based on the code violations, all residents were ordered to vacate the premises by 9:00 p.m. that day, and they remained displaced for five nights until the Raymonds filed an appeal. Meanwhile, the state district court issued the Raymonds an order to appear and show cause why they should not be held in contempt of the 2004 settlement agreement. But before appearing, the Raymonds entered into a stipulated permanent

---

[2] "Section 8" refers to the federal rental-housing-assistance program for those with low income.

- 4 -

injunction that required them to remove all parts and cars other than their personal vehicles; limited any repair work to maintenance and minor repairs of their own personal vehicles confined to their closed garage; and prohibited them from working on other peoples' cars, storing cars other than their own personal vehicles, or storing parts other than those used on their personal vehicles. The Raymonds apparently also addressed the interior code violations.

Plaintiffs then brought this action, and the case proceeded to a jury trial. Three claims survived defendants' trial motions for judgment as a matter of law and were submitted to the jury: Mr. Raymond's Fourth Amendment claims of excessive force and wrongful arrest, and a state-law malicious-abuse-of-process claim brought by the Raymonds and Ms. Holmes. The jury found in favor of defendants on Mr. Raymond's claims but in favor of Mrs. Raymond and Ms. Holmes on their malicious-abuse-of-process claim. The jury awarded $3,100 in damages to Mrs. Raymond and $100,000 in damages to Ms. Holmes. Mr. Martinez and the City moved again for JMOL under Fed. R. Civ. P. 50(b) as to both Mrs. Raymond and Ms. Holmes. The district court granted the motion as to Mrs. Raymond but denied it as to Ms. Holmes. This appeal followed.

## II. DISCUSSION

"We review the district court's denial of a Rule 50(b) motion for judgment as a matter of law *de novo*, applying the same legal standard as the district court." *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1112 (10th Cir. 2004) (internal

quotation marks omitted). "In reviewing the district court's refusal to grant JMOL, this court draws all reasonable inferences in favor of the nonmoving party." *Id.* (brackets and internal quotation marks omitted). "The district court's refusal to grant JMOL will only be reversed if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *Id.* (internal quotation marks omitted). "Judgment as a matter of law is only appropriate if, after reviewing all of the evidence in the record, there is no legally sufficient evidentiary basis for a claim under the controlling law." *Hysten v. Burlington N. Santa Fe Rwy. Co.*, 530 F.3d 1260, 1269 (10th Cir. 2008).

Although "federal law controls the ultimate, procedural question whether JMOL is appropriate," the substantive law of the forum state, here New Mexico, governs the analysis of the state-law claim of malicious abuse of process. *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244 (10th Cir. 2009) (brackets omitted). Under New Mexico law, which construes "the tort of malicious abuse of process . . . narrowly in order to protect the right of access to the courts," the claim has three elements: "(1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages." *Durham v. Guest*, 204 P.3d 19, 26 (N.M. 2009). "An improper use of process may be shown by (1) filing a complaint without probable cause, or (2) an irregularity or impropriety suggesting extortion, delay, or harassment, or other conduct formerly

- 6 -

actionable under the tort of abuse of process." *Id.* (brackets and internal quotation marks omitted). "A use of process is deemed to be irregular or improper if it (1) involves a procedural irregularity or a misuse of procedural devices such as discovery, subpoenas, and attachments, or (2) indicates the wrongful use of proceedings, such as an extortion attempt." *Id.*

As to the second element, "[t]here must be a purpose to accomplish an illegitimate end." *DeVaney v. Thriftway Mktg. Corp.*, 953 P.2d 277, 287 (N.M. 1997), *overruled on other grounds by Durham*, 204 P.3d at 26; *abrogated on other grounds by Fleetwood Retail Corp. of N.M. v. LeDoux*, 164 P.3d 31, 39-40 (N.M. 2007). Examples of an improper purpose include when a claim is pursued "primarily in order to deprive another of the beneficial use of his or her property in a manner unrelated to the merits of the claim" or "primarily for the purposes of harassment or delay." *Id.* An "an overt misuse of process, such as a lack of probable cause, or an excessive attachment, may support an inference of an improper purpose," but "[t]he degree to which process has been misused will determine the strength of the permissible inference of an improper motive." *Id.* at 287-88.

In ruling on the JMOL motion, the district court reasoned that Mrs. Raymond failed to meet the first element of her claim because probable cause existed for Mr. Martinez to search the Raymonds' house for code violations. But in denying the motion as to Ms. Holmes, the court explained that her claim was subject to a different analysis. The court observed that even though Mr. Martinez knew Ms. Holmes lived

- 7 -

in the separate Section 8 apartment, she was not named in the application for the warrant, there were no allegations in the application of any code violations on her behalf, and her name did not appear on the warrant. Thus, the court concluded that there was sufficient evidence for the jury to find that the omission of Ms. Holmes's name from the warrant application was an irregularity or impropriety satisfying the first element of her claim.

Regarding the second element, the district court concluded that there was sufficient evidence for a jury to find that Mr. Martinez obtained the warrant knowing it was illegitimate as to Ms. Holmes and that "Defendants were so intent on evicting the Raymonds that they completely disregarded Ms. Holmes." Aplt. App., Vol. I at 120. The court further explained that the jury could construe the failure to disclose Ms. Holmes's independent living arrangement in the warrant application as indicative of a malicious purpose, namely, "to deprive her of her property in a manner unrelated to the merits of the claims in the warrant, acting with ill will and with the intent to accomplish an illegitimate end." *Id.*

Finally, the court concluded that Ms. Holmes's testimony showed that she sustained damages, satisfying the third element of her claim.

Mr. Martinez has taken issue only with the district court's analysis of the first and second elements of Ms. Holmes's claim. We easily agree with the district court as to the first element. Mr. Martinez admitted at trial that, because of his 2004 investigation, he knew Ms. Holmes was "a non-family member" and living in the

Raymonds' house. *Id.*, Vol. V at 803. He also stated that he wanted to ensure that the entire premises was safe, in part because Ms. Holmes lived there. *Id.* From this the jury could reasonably find that Mr. Martinez's failure to include Ms. Holmes's name and living situation in his application for a warrant was "a procedural irregularity or a misuse of [a] procedural device[.]" *Durham*, 204 P.3d at 26. We further conclude that the jury could have reasonably determined that Mr. Martinez lacked probable cause as to Ms. Holmes's apartment because there was nothing in particular about the observed external conditions, which were the basis for his investigation on January 30, that suggested interior code violations in Ms. Holmes's apartment. As the district court pointed out, Mr. Martinez's warrant application did not allege any violations in her apartment.

As to the second element, we conclude that the evidence does not point only in favor of Mr. Martinez and that there are reasonable inferences supporting Ms. Holmes. *See Hardeman*, 377 F.3d at 1112. The jury could have reasonably inferred an improper purpose from the overt and egregious misuse of process that occurred here—the omission of Ms. Holmes's apartment from the warrant application and warrant. *See DeVaney*, 953 P.2d at 287-78. The jury could have determined that Mr. Martinez's request to search the entire Raymond premises without identifying Ms. Holmes's apartment, which he knew to be a separate residence, was primarily an effort to accomplish an illegitimate end—omitting Ms. Holmes's name from the application made it easier to obtain the warrant for the entire premises even though

nothing in the exterior conditions suggested a code violation in the apartment. This in turn increased the odds of evicting the Raymonds for an interior code violation. The jury could have reasonably concluded that the intent to evict the Raymonds was primarily motivated by Mr. Raymond's aborted attempt to run Mr. Martinez down two days earlier rather than by the complaints about outdoor automotive activities that gave rise to the January 30 investigation. And the jury also could have decided that Mr. Martinez's motive extended to evicting or harassing the Raymonds' tenant, Ms. Holmes. Lending credence to a retaliation theory was conflicting testimony whether there was a gas leak in the Raymond's commercial stove (also a cause for eviction) or whether those executing the warrant blew out the pilot light to conjure up a gas leak. In addition, the jury could have found that Mr. Martinez obtained the warrant in lieu of giving the Raymonds the pre-inspection notice required by the 2004 settlement agreement and that this was an illegitimate purpose that affected Ms. Holmes as well as the Raymonds.

Although the evidence does not necessarily compel such lines of thought, it is sufficient to support them, which is all that is required to uphold a jury verdict. *See Hardeman*, 377 F.3d at 1112. Mr. Martinez's arguments do not persuade us otherwise. He complains that there was no process to abuse vis-à-vis Ms. Holmes because she was not named in the warrant. But the lack of process is precisely the point, and as we have discussed, there was sufficient evidence to support a finding that the omission of Ms. Holmes was an irregularity in the process Mr. Martinez used

to enter and inspect her apartment.  Mr. Martinez also argues that (1) the district court erred in not concluding that Mr. Martinez was merely negligent in omitting Ms. Holmes's name from the warrant application and (2) Ms. Holmes could not prevail on her claim of malicious abuse of process because the Raymonds did not prevail on theirs.  But he did not present these theories to the district court in his post-trial JMOL motion, and we see no reason to overlook this failure to preserve the issue for our review.  *See Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 721 (10th Cir. 1993) (reiterating long-standing rule "that a party may not lose in the district court on one theory of the case, and then prevail on appeal on a different theory").[3]

The judgment of the district court is affirmed.

Entered for the Court

Monroe G. McKay
Circuit Judge

---

[3]   Mr. Martinez did mention negligence in his JMOL motion, but only to state that plaintiffs' counsel suggested during trial that negligence was a cause of action, and to argue that New Mexico had not waived its sovereign immunity for negligence claims.  *See* Aplt. App., Vol. I at 69.