This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**DEBBIE SMITH and PEGGY GRANGETTO,**

Plaintiffs/Counterdefendants-Appellants,

v.                                                  **No. A-1-CA-34920**

**ROXANNE LUCERO and BRUCE DAVIS,**

Defendants/Counterplaintiffs-Appellees.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Karen L. Parsons, District Judge**

Law Office of Jane B. Yohalem
Jane B. Yohalem
Santa Fe, NM

for Appellants

Sanders, Bruin, Coll & Worley, P.A.
Ian D. McKelvy
Roswell, NM

for Appellees

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1} This appeal arises out of a "Pet Ownership Agreement" (the agreement) for the sale of two Chihuahua dogs (the dogs). Fourteen months after selling the dogs to Defendants and delivering them from California to New Mexico, Plaintiffs initiated a breach of contract action, alleging the dogs were not being cared for in accordance with the terms of the agreement. Defendants responded by filing a counterclaim for malicious abuse of process. The district court granted summary judgment in favor of Defendants on Plaintiffs' breach of contract claim. Defendants' counterclaim proceeded to a bench trial, and the district court found in favor of Defendants, awarding attorney's fees and costs, punitive damages, and prejudgment and postjudgment interest.

{2} Plaintiffs appeal both the district court's order granting summary judgment in favor of Defendants and its award of damages on Defendants' counterclaim for malicious abuse of process. We affirm the district court in part and reverse in part.

{3} Because this is a memorandum opinion and the parties are familiar with the factual and procedural background, we reserve discussion of the pertinent facts and procedure within the context of the parties' arguments. After the district court granted summary judgment in favor of Defendants, it then held a bench trial on the merits on Defendants' counterclaim for malicious abuse of process. The district court entered extensive findings of fact and conclusions of law. Because Plaintiffs do not

specifically challenge any of the district court's findings of facts, we rely on those findings in our analysis. *See* Rule 12-213(A)(4) NMRA ("The argument [in a party's brief-in-chief] shall set forth a specific attack on any finding, or such finding shall be deemed conclusive."); *Seipert v. Johnson*, 2003-NMCA-119, ¶ 26, 134 N.M. 394, 77 P.3d 298 (stating that "[a]n unchallenged finding of the [district] court is binding on appeal").

**DISCUSSION**

**Summary Judgment was Proper on Plaintiffs' Breach of Contract Claim**

{4}     Plaintiffs argue that the district court erred in granting summary judgment to Defendants because the parties' agreement was ambiguous, specifically with regard to the love-and-care provision. The agreement provided in part that Defendants "agree to love[-]and[-]care for [the dogs] in the best possible manner in order to provide them with a happy and healthy environment for the remainder of their normal lives" (the love-and-care provision). They argue that the court's failure to consider extrinsic evidence warrants reversal because such evidence would have illustrated ambiguity within the agreement. Such ambiguity, they argue, raises a question for trial as to whether Plaintiffs' primary motivation in the agreement was the level of care they expected Defendants to provide to the dogs. Plaintiffs also advance a number of arguments that invite this Court to alter the agreement to their benefit and create a

remedy for them to get the dogs back where they did not otherwise contract to do so. In response, Defendants argue that the district court considered all relevant evidence, and properly granted summary judgment because there was no triable issue of material fact on the parties' agreement.

{5} "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Bank of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (internal quotation marks and citation omitted). "We review issues of law de novo." *Id.* "On appeal from the grant of summary judgment, we ordinarily review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146.

{6} "[T]he party opposing summary judgment has the burden to demonstrate the existence of specific evidentiary facts which would require trial on the merits. A party may not simply argue that such evidentiary facts might exist, nor may it rest upon the allegations of the complaint." *Horne v. Los Alamos Nat'l Sec., L.L.C.*, 2013-NMSC-004, ¶ 15, 296 P.3d 478 (alteration, internal quotation marks, and citations omitted); *see* Rule 1-056(E) NMRA ("When a motion for summary judgment is made and

4

supported as provided in this rule, [the plaintiffs] may not rest upon mere allegations or denials of [their] pleading, but [their] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). "An issue of fact is 'genuine' if the evidence before the court considering a motion for summary judgment would allow a hypothetical fair-minded fact[-]finder to return a verdict favorable to the non-movant on that particular issue of fact. An issue of fact is 'material' if the existence (or non-existence) of the fact is of consequence under the substantive rules of law governing the parties' dispute." *Associated Home & RV Sales, Inc. v. Bank of Belen*, 2013-NMCA-018, ¶ 23, 294 P.3d 1276 (internal quotation marks and citation omitted). "However, if no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review and are not required to view the appeal in the light most favorable to the party opposing summary judgment." *City of Albuquerque*, 2009-NMCA-081, ¶ 7; *Ovecka v. Burlington N. Santa Fe Ry. Co.*, 2008-NMCA-140, ¶ 9, 145 N.M. 113, 194 P.3d 728 ("[W]hen no facts are in dispute and the undisputed facts lend themselves to only one conclusion, the issue may properly be decided as a matter of law.").

{7} In their motion for summary judgment, Defendants argued that any ambiguity in the parties' agreement was to be construed against Plaintiffs because they drafted the agreement, and neither the agreement itself nor New Mexico law permitted

Plaintiffs to regain ownership of the dogs simply because they disagreed with the manner in which they were provided care. Plaintiffs argued that the genuine issue of material fact in dispute was contained in the love-and-care provision of the agreement. They asked the district court to deny Defendants summary judgment on the basis that Plaintiffs did not believe the dogs were being cared for in the best possible manner, specifically that the dogs were around Defendants' German Shepherds (the larger dogs).

{8}     When asked by the court whether the agreement contained any provisions requiring the dogs to be returned under such circumstances, Plaintiffs conceded there were none. Plaintiffs instead requested that the court craft an equitable remedy to allow for such a result. The district court reasoned that Plaintiffs witnessing the dogs in the presence of the larger dogs did not create a genuine issue of material fact, and based upon the language of the parties' agreement it could not grant Plaintiffs' requested remedy of forcing Defendants to return the dogs. The district court subsequently granted Defendants' motion and dismissed Plaintiffs' complaint with prejudice.

{9}     Plaintiffs, California residents, who purchased and cared for the dogs in 2004 for approximately five years sought a new home for them in hopes of providing them with more attention and greater outdoor space. Plaintiffs posted an announcement on

a dog breeder's website seeking a "forever home" for the dogs. Defendants, New Mexico residents, responded to the announcement and the parties proceeded to engage in extensive communications concerning the dogs. The parties communicated for several weeks regarding the possible transfer of the dogs, their physical conditions, food, supplements, toys and bedding. On October 9, 2009, Plaintiffs personally visited Defendants' home to ensure it was a proper environment for the dogs.

{10} On October 19, 2009, the parties entered into the agreement wherein Plaintiffs transferred ownership of the dogs to Defendants in exchange for $100.00. Plaintiffs drafted the agreement without assistance from counsel or input from Defendants. As noted earlier, the agreement included the love-and-care provision. The agreement further provided two specific means by which Plaintiffs could regain ownership of the dogs: (1) if Defendants chose to relinquish ownership of the dogs; or, (2) if Defendants predeceased the dogs.

{11} The agreement also required Defendants to keep Plaintiffs apprised of their current contact information for the duration, including their telephone number and home address. Aside from caring for the dogs, this was Defendants' only ongoing contractual responsibility to Plaintiffs. The more technical aspects of the agreement included that it is in effect through the natural lives of the dogs, New Mexico law would govern the agreement and the document as executed was inclusive of the

parties' entire agreement. Prior to entering into the agreement, Plaintiffs were aware that Defendants owned larger dogs, that they were allowed to be with the smaller dogs, Defendants had successfully raised and cared for other Chihuahuas in the same environment, the dogs were under the care of a New Mexico licensed and reputable veterinarian, and at least one of the Chihuahuas was already overweight.

{12}   In the months that followed the execution of the agreement, the parties remained in regular contact. Defendants would give Plaintiffs updates on the dogs and how they were getting along with Defendants' larger dogs. Plaintiffs argue that these pre-dispute communications created a strong inference that the care, health, happiness, and safety of the dogs were at the heart of the contract. In June 2010 Plaintiffs traveled to Defendants' home in New Mexico to visit the dogs. During the visit, Plaintiffs were displeased with the care Defendants were providing to the dogs. Chief amongst Plaintiffs' concerns were the dogs associating with Defendants' larger dogs, the dogs were exhibiting what Plaintiffs regarded as stressed behavior, and experiencing allergies and weight gain.

{13}   Following their visit to Defendants' home, Plaintiffs sent an email to Defendants requesting that they return the dogs. The email stated that it was apparent the dogs were still attached to Plaintiffs, and that because the dogs were trying to get in the car with them the dogs had not adjusted to their new environment. In an email,

Plaintiffs noted that they had an emotionally difficult time with their decision to give the dogs up and pleaded with Defendants to return the dogs. Defendants responded indicating that they were unlikely to comply with Plaintiffs' request due to their own attachment to the dogs. This email exchange continued with Plaintiffs' admissions that they "have regretted giving up the [dogs] since the first day and have cried many nights because we miss them so much" and they "have found it impossible" to live without the dogs.

{14} After Defendants initially denied Plaintiffs' request, Plaintiffs again sent an email informing Defendants that they utilized an animal communicator who purportedly communicated with the dogs by psychic means, and shared with them their belief that the dogs were distressed under Defendants' care. Defendants responded with a final email stating: "Our decision to keep the [dogs] is final—end of discussion. Except for the notification of address change, there will be no further communication."

{15} However, Defendants' email sent with the goal of cutting off communication did not achieve its end. Over the course of the next year, Plaintiffs sent seven emails with subject lines including "[p]lease let the [dogs] come back to us" and "[l]et the [dogs] go."Some of these emails were sent from Plaintiffs' personal email accounts and others from email addresses specially created after Defendants blocked Plaintiffs'

emails. After the email attempts proved to be unsuccessful, Plaintiffs mailed ten postcards to Defendants' home with messages purportedly from the dogs themselves such as "[p]lease let us go home. We miss our mommies so much." Other postcards were sent with messages from Plaintiffs themselves, including one that stated, "[y]ou were right . . . [y]ou said you're damned if you don't[.]"

{16} In August 2011 Plaintiffs retained counsel in California, who sent Defendants a letter demanding the return of the dogs. This effort also did not result in Defendants relinquishing ownership of the dogs. In December 2011 Plaintiffs filed a complaint for return of property or, in the alternative, breach of contract. The complaint alleged that "Defendants are in breach of the terms of [the] agreement and, having breached the contract, should be required to return [the dogs] to . . . Plaintiffs." Plaintiffs essentially allege that by exposing the dogs to Defendants' larger dogs, the dogs' health deteriorated, and therefore Defendants breached the love-and-care provision. Plaintiffs sought judgment against Defendants and an order requiring that they immediately surrender the dogs to Plaintiffs. Defendants responded by filing a counterclaim for malicious abuse of process, alleging that Plaintiffs lacked probable cause to bring the lawsuit and that their primary motive was to extort the return of the dogs to which they were not legally entitled.

{17}  "The purpose, meaning, and intent of the parties to a contract is to be deduced from the language employed by them[.]" *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 31, 314 P.3d 688 (alteration, internal quotation marks, and citation omitted). "We view the contract as a harmonious whole, give meaning to every provision, and accord each part of the contract its significance in light of other provisions." *Id.* (alteration, internal quotation marks, and citation omitted). In interpreting any contract, this Court "effectuate[s] the intent of the parties by adopting a reasonable construction of the usual and customary meaning of the contract language." *Smith & Marrs, Inc. v. Osborn*, 2008-NMCA-043, ¶ 10, 143 N.M. 684, 180 P.3d 1183 (internal quotation marks and citation omitted). "A contract is deemed ambiguous only if it is reasonably and fairly susceptible of different constructions. Whether ambiguity exists is a question of law; therefore this Court reviews the district court's decision de novo." *Envtl. Control, Inc. v. City of Santa Fe*, 2002-NMCA-003, ¶ 14, 131 N.M. 450, 38 P.3d 891 (citation omitted). "When the language of the contract clearly and unambiguously expresses the agreed-upon intent of the parties, [the] Court will give effect to such intent. The mere fact that the parties are in disagreement on the construction to be given does not necessarily establish ambiguity." *LensCrafters, Inc. v. Kehoe*, 2012-NMSC-020, ¶ 18, 282 P.3d 758 (internal quotation marks and citations omitted). "[A]bsent any ambiguity, the [district] court may not alter or fabricate a new

agreement for the parties." *CC Hous. Corp. v. Ryder Truck Rental, Inc.*, 1987-NMSC-117, ¶ 6, 106 N.M. 577, 746 P.2d 1109. "[W]here such language is not ambiguous, it is conclusive." *Benz*, 2013-NMCA-111, ¶ 31 (internal quotation marks and citation omitted).

{18} Plaintiffs included in their complaint, and were therefore aware, that the only avenue by which Plaintiffs could regain ownership of the dogs was if Defendants chose to relinquish ownership of the dogs; or, second, if Defendants predeceased the dogs. Plaintiffs were also aware that neither of those conditions existed here.

{19} Nothing in the agreement required Defendants to keep the dogs separate from the larger dogs. Moreover, Plaintiffs never mentioned their expectations or concerns with the presence of the larger dogs and all of the dogs interacting. The district court specifically found that Plaintiffs failed to provide any proof that Defendants agreed to keep the dogs separated from the larger dogs. To the contrary, the court found that Plaintiffs knew the dogs would be around the larger dogs at the time they drafted the agreement. In addition, although Plaintiffs claimed to be concerned about the health of the dogs, they admitted that they never: (1) reviewed the dogs' veterinarian records provided by Defendants; (2) consulted with any veterinarians to review the dogs' records or to have the dogs independently examined. Plaintiffs' argument that the court should have considered extrinsic evidence is without merit as they provided no

credible or admissible evidence. Rather, their concerns were based on subjective personal opinions and the inadmissible opinions of an animal communicator. Because Plaintiffs presented no credible or admissible extrinsic evidence for consideration, the issue is moot.

{20} It is important to point out that we are also bound by the district court's rejection of Plaintiffs' findings of fact. *See, e.g.*, *Hill v. Cmty. of Damien of Molokai*, 1996-NMSC-008, ¶ 41, 121 N.M. 353, 911 P.2d 861 ("Failure to adopt a proposed finding of fact is in effect a negative finding with respect to that fact, which binds this Court on appeal."). While there are numerous Plaintiffs' proposed findings of fact that are in direct conflict with the district court's findings of fact, most notable is Plaintiffs' proposed finding of fact number 36. It states that "Roxanne Lucero told Debbie Smith and Peggy Grangetto that the big dogs and little dogs would never meet." The district court did not credit Plaintiffs' testimony on that point. So even if summary judgment were improperly granted on Plaintiffs' breach of contract claim because Plaintiffs' proposed testimony about this alleged promise was sufficient to create an ambiguity, it does not matter because the district court did not credit this testimony when it was presented at trial.

{21} Plaintiffs are asking this Court to rewrite the agreement. The parties were free to include a provision permitting Plaintiffs to regain ownership of the dogs if they

disagreed with the level and manner of care provided to the dogs. It is not the role of this Court to write such a provision into the parties' agreement. *See Benz*, 2013-NMCA-111, ¶ 31 ("The purpose, meaning, and intent of the parties to a contract is to be deduced from the language employed by them; and where such language is not ambiguous, it is conclusive." (alteration, internal quotation marks, and citation omitted)).

{22}   The clear terms of the love-and-care provision of the agreement were not made ambiguous by Plaintiffs' uncommunicated expectations of Defendants, in providing such love-and-care to the dogs. We agree with the district court that, pursuant to the terms of the parties' agreement and under these circumstances, returning the dogs to Plaintiffs was not an available remedy. As a result, we conclude that the district court was correct in granting summary judgment in favor of Defendants.

{23}   Plaintiffs also argue that the district court erred by holding that NMSA 1978, Section 77-1-1 (1912) preempts or supersedes their right to include the love-and-care provision into the contract. However, we need not address their argument since the district court discredited the factual basis for Plaintiffs' claims.

**Counterclaim for Malicious Abuse of Process**

{24}   Plaintiffs filed a motion for summary judgment on Defendants' counterclaim for malicious abuse of process. As noted earlier, Plaintiffs conceded that there was no

14

contractual or equitable remedy available to get the dogs back. They reasoned that their efforts to continue the lawsuit in light of this concession should not be interpreted as abusing the process because their goal was for this Court to read in or create an equitable remedy as it pertained to the parties' agreement. The district court denied Plaintiffs' motion and Defendants' malicious abuse of process claim proceeded to a bench trial. The district court found in favor of Defendants and held that they were entitled to attorney's fees and costs and punitive damages as a result of Plaintiffs' actions. The district court also awarded prejudgment interest at a rate of ten percent and postjudgment interest at a rate of 8.75 percent.

{25}     Plaintiffs challenge both the legal and factual sufficiency of the district court's ruling on Defendants' counterclaim for malicious abuse of process. Plaintiffs assert that the district court erred as a matter of law in ruling that Plaintiffs lacked probable cause to file the breach of contract claim. Plaintiffs further assert that reversal is warranted on the district court's award of punitive damages and prejudgment interest based on the district court's legal error. Defendants argue that Plaintiffs are actually asking that this Court to "interpret a general provision about 'love-and-care' as a completely standardless forfeiture clause that is entirely subjective in its application."

{26}     We apply a substantial evidence standard of review to claims involving the tort of malicious abuse of process. "On appeal, we do not re-weigh the evidence or

substitute our judgment for that of the fact-finder, but determine whether substantial evidence supports the result reached." *Dawley v. La Puerta Architectural Antiques, Inc.*, 2003-NMCA-029, ¶ 12, 133 N.M. 389, 62 P.3d 1271. "In determining whether the evidence is legally sufficient to support the district court's decision, we resolve all disputes of fact in favor of the successful party and indulge all reasonable inferences in support of the judgment." *Id.* In applying the substantial evidence standard of review, "we are mindful that the tort of malicious abuse of process must be construed narrowly to protect the right of access to the courts." *Id.* ¶ 13.

**{27}** To establish a claim for malicious abuse of process, the following elements must be met: "(1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages." *Durham v. Guest*, 2009-NMSC-007, ¶ 29, 145 N.M. 694, 204 P.3d 19. "A use of process is [considered] irregular or improper if it (1) involves a procedural irregularity or a misuse of procedural devices such as discovery, subpoenas, and attachments, or (2) indicates the wrongful use of proceedings, such as an extortion attempt." *Id.* "[Mis]use of process may be shown by (1) filing a complaint without probable cause, or (2) an irregularity or impropriety suggesting extortion, delay, or harassment, or other conduct formerly

actionable under the tort of abuse of process." *Id.* (alteration, internal quotation marks, and citation omitted).

**Use of Process**

{28}    Plaintiffs improperly used the judicial process in bringing and continuing their breach of contract claim knowing that their demand for the return of the dogs was never an available remedy under the contract. *See Richardson v. Rutherford*, 1990-NMSC-015, ¶ 23, 109  N.M. 495, 787 P.2d 414 (noting that "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required" and that "[i]t is the abuse of the legal system that is at issue" (emphasis, internal quotation marks, and citations omitted)).

{29}    Generally, Plaintiffs are asking this Court to rewrite their contract to impose obligations on Defendants that were never communicated to them, much less agreed to, and to create a remedy not otherwise provided for in the agreement or by law. In pursuing their claims and prior to filing suit, Plaintiffs' California counsel misrepresented the facts and nature of the agreement in a demand letter. Plaintiffs' primary motive throughout this litigation has been the return of the dogs, despite the fact that they had no such legal recourse. While Plaintiffs expressed a concern for the dogs' health, they never: (1) asked for the dogs' health records or medical records; (2) they never contacted the dogs' veterinarian, even after getting a letter from their

17

veterinarian on the dogs' physical condition, and the propriety of their placement with Defendants; (3) they never did any independent research into the dogs' current veterinarian; (4) they never asked for additional or updated veterinarian records; (5) they never had an independent veterinarian review the dogs' records; and finally (6) they never reviewed the veterinarian records that were produced. There is substantial evidence to support the district court's conclusion that Plaintiffs' motives were improper.

**Misuse of Process**

{30}     Plaintiffs contend that they had probable cause to file their lawsuit because they personally visited Defendants' home to observe the condition of the dogs prior to bringing suit and were saddened to find that the dogs were overweight, were not kept separate from the larger dogs, were not getting the level of exercise expected, and they had allergies. Defendants challenge the district court's "finding" that they did not do a "reasonable" prefiling investigation. The district court actually found that Plaintiffs never performed any pre-lawsuit filing investigation or any investigation at all to determine the safety of the two dogs being around the larger dogs.

{31}     Plaintiffs filed their complaint without conducting a reasonable prefiling investigation and proceeded with their claim for purposes of pressuring Defendants to return the dogs to them. "For the purpose of demonstrating misuse of process,

18

probable cause is defined as the reasonable belief, founded on known facts established after a reasonable pre[]filing investigation." *Dawley*, 2003-NMCA-029, ¶ 18 (internal quotation marks and citation omitted).

{32}     As noted earlier, there were only two conditions allowing for the return of the dogs and Plaintiffs knew that neither condition applied in this case. Plaintiffs' allegations in their complaint were false. Even though Plaintiffs had knowledge of Defendants' larger dogs prior to drafting the agreement, they never mentioned their concern about the dogs interacting with the larger dogs in any correspondence, much less in the agreement itself. Plaintiffs' credibility also was an issue at trial. Though they claimed not knowing about the three larger dogs until their visit to Defendants' home, they were discredited with two photographs they had received prior to their visit that showed the larger dogs with the dogs in their presence. The district court found that Plaintiffs knew the dogs would be around the larger dogs at the time they entered into the agreement. In addition, Plaintiffs never performed any prefiling investigation, to any degree, to determine whether it was safe for the dogs to be around the larger dogs, and whether or not their interactions would result in the deterioration of the dogs' health. Despite knowledge of these false allegations in the complaint, Plaintiffs never amended or withdrew the allegations.

{33} Plaintiffs also engaged in harassing behavior. Plaintiffs contacted the Defendants multiple times by email, requesting the return of the dogs. Even after Defendants cut off all communication with Plaintiffs and blocked their email, Plaintiffs created new email addresses and continued to contact Defendants nonetheless. The district court found that the purpose of this ongoing harassing communication was to get Defendants to return the dogs to them.

{34} Plaintiffs' assertion that they had probable cause to file their claim based solely on their personal visit to Defendants' home to observe the well-being of the dogs does not fulfill their obligation to complete a prefiling investigation, much less a reasonable one. Plaintiffs acknowledged before the district court that they could not get the dogs back unless Defendants predeceased the dogs or they no longer wanted them. As the district court properly noted, neither situation was present.

{35} There was no remedy available to Plaintiffs simply because they disagreed with the manner in which the dogs were being cared for, or because they were experiencing regret as a result of selling them. Even if we were to consider that such a remedy could have existed under such circumstances, Plaintiffs' reliance on an animal communicator, and their refusal to consult with the licensed veterinarians who were treating the dogs or inspect their records was not reasonable for purposes of conducting a prefiling investigation.

{36}     Before filing their lawsuit, Plaintiffs were legally obligated to investigate the facts of their claim in an objective, dispassionate manner. Substantial evidence supports the district court's findings that Plaintiffs lacked probable cause to file their breach of contract claim and that they engaged in behavior illustrating harassment. Plaintiffs lacked a reasonable factual basis for filing this lawsuit based on their belief that the dogs would be better cared for under their watch.

**Damages**

{37}     Finally, it is undisputed that Defendants incurred damages in defending this lawsuit, their attorney's fees and costs. We conclude that the district court's factual and legal findings are supported by substantial evidence, and we therefore affirm its judgment entered in favor of Defendants on their counterclaim for malicious abuse of process.

**Punitive Damages and Prejudgment Interest on Punitive Damages**

{38}     Plaintiffs argue that even if this Court affirms the malicious abuse of process judgment, it should nonetheless reverse the award of punitive damages and prejudgment interest at ten percent. Plaintiffs do not challenge the district court's award of attorney's fees and costs, or postjudgment interest. The district court awarded Defendants $50,000 in punitive damages, plus prejudgment interest at ten percent. Plaintiffs argue that the district court's decision "is founded on the court's

mistaken belief that the Plaintiffs proceeded in bad faith with a claim which no reasonable person could have possibly viewed as valid."

{39} On appeal, we review for substantial evidence the district court's findings underlying an award of punitive damages. *See Pub. Serv. Co. of N.M. v. Diamond D. Constr. Co.*, 2001-NMCA-082, ¶ 36, 131 N.M. 100, 33 P.3d 651. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Plaintiffs argue that the district court's award of punitive damages is based on a misapprehension of the law, but do not address the amount of the punitive damages. Plaintiffs do not contest the district court's specific factual finding: "Plaintiffs' [actions] were intentional, willful, wanton, reckless, and done in bad faith." Based on the district court's undisputed finding of fact as well as our discussion of the pertinent facts, there is substantial evidence to support the district court's award of punitive damages. We affirm the district court's $50,000 punitive damage award to Defendants.

{40} It appears that the district court applied prejudgment interest to the entire award of $94,199.99. Plaintiffs argue that punitive damages are not subject to prejudgment interest. We agree. This Court has held that punitive damages awards are not subject to prejudgment interest. *See Weidler v. Big J Enters., Inc.*, 1998-NMCA-021, ¶¶ 53, 55, 124 N.M. 591, 953 P.2d 1089 (noting that by the very nature of punitive damages,

22

they are a windfall on an otherwise fully compensated party, thus to allow prejudgment interest on punitive damages would only compound that recovery). This Court concludes that Defendants were not entitled to prejudgment interest on the punitive damages portion of the award.

{41} Prejudgment interest is authorized by NMSA 1978, Section 56-8-4 (2004). The purpose of prejudgment interest is to "foster settlement and prevent delay in all types of litigation." *Weidler*, 1998-NMCA-021, ¶ 52. The decision to award prejudgment is "left to the discretion of the [district] court." *Gonzales v. N.M. Dep't of Health*, 2000-NMSC-029, ¶ 38, 129 N.M. 586, 11 P.3d 550; *see* § 56-8-4(B). In order for this Court to find an abuse of discretion, the Plaintiffs have "the burden [to] prove[] that the district court's decision is contrary to all logic and reason." *DeLisle v. Avallone*, 1994-NMCA-012, ¶ 33, 117 N.M. 602, 874 P.2d 1266. Plaintiffs argue that the district court's award of prejudgment interest is based on a misapprehension of the law. Based on the foregoing discussion, the district court's decision is not contrary to all logic and reason. We hold that the district court did not abuse its discretion in awarding Defendants ten percent prejudgment interest.

**CONCLUSION**

{42} We affirm both the district court's order granting summary judgment in favor of Defendants, and its award of damages on Defendants' counterclaim for malicious

abuse of process for attorney fees and costs, prejudgment and postjudgment interest for those fees and costs. We affirm the district court's award of punitive damages and postjudgment interest on those damages. We reverse the district court's award of prejudgment interest as it applies to the punitive damages, and remand this matter to the district court to correct the judgment accordingly.

{43} **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Chief Judge**

_____
**EMIL KIEHNE, Judge**

24